[Cite as *State v. Payne*, 2014-Ohio-4304.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-A-0001** |
| TYLER S. D. PAYNE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CR 25.

Judgment: Reversed and remanded.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michael A. Hiener,* P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} After trial by jury, appellant, Tyler S. D. Payne, was found guilty on one count of illegal assembly or possession of chemicals for the manufacture of drugs, illegal manufacture of drugs, and aggravated arson. The Ashtabula County Court of Common Pleas found the three crimes merged for purposes of sentencing and the state elected to proceed with sentencing on the jury's finding of guilt on the aggravated arson charge. Appellant now appeals from the judgment of conviction. At issue is whether

appellant's conviction for aggravated arson is supported by sufficient, credible evidence. For the reasons that follow, we hold the conviction was not supported by sufficient evidence. The judgment is therefore reversed and remanded for further proceedings.

{¶2} On December 8, 2012, Ricard Loveridge was at 3228 Altman Court, an apartment managed by the Ashtabula Metropolitan Housing Authority ("AMHA"). Vernotta Jiminez was the resident of the apartment and appellant spent significant time at the residence. Loveridge was repairing appellant's car, which he regularly did in exchange for methamphetamine. After fixing the vehicle, Loveridge went into a neighboring apartment to visit a friend, Brittany Gregory. In addition to obtaining drugs for his work as a mechanic, Loveridge testified he was waiting for either Vernotta or appellant to deliver a key to him. The purpose of the key was not disclosed.

{¶3} After visiting with Brittany, Loveridge left her apartment and proceeded to Vernotta's home. As he approached Vernotta's apartment, however, he noticed smoke. He entered the apartment, and observed the kitchen engulfed in flames. Loveridge saw Vernotta as well as appellant in the apartment. Loveridge, realizing he had drugs and needles on him, subsequently left the scene in his vehicle accompanied by appellant, Vernotta, and another woman named Kaitlyn. The fire caused $83,000 in damages to AMHA property.

{¶4} Security Technologies provided a full service security system for the AMHA's properties. According to Larry DeGeorge, owner of the company, a surveillance camera was monitoring Altman Court on December 8, 2012. Once the fire became apparent from the camera, a dispatcher notified authorities. Video footage of the fire was saved and forwarded to the police.

{¶5}    Ashtabula City Fire Chief, Ronald Pristera, responded to the fire.  Once the fire was extinguished, Chief Pristera noticed a 20-ounce bottle in the kitchen sink with water running over it.  The bottle appeared over-pressurized.  He further located a similar over-pressurized bottle in the bathroom sink with water running over it; upon later inspection, this bottle had ammonium nitrate pearls at its bottom.  Ammonium nitrate pearls, extracted from cold packs, are frequently used in the production of methamphetamine. Further, an air-purifying respirator was located in the bathroom of the apartment; lighter fluid and drain cleaner were also found in the bathroom.  Cold packs and Sudafed were located in the bedroom.

{¶6}    Lieutenant John Paul, a fire investigator with the Ashtabula City Fire Department, investigated the cause of the fire.  Lieutenant Paul concluded the fire had originated in the kitchen. The lieutenant eliminated cooking or electricity as possible causes.  Officially, however, the cause of the fire was ruled "undetermined."

{¶7}    Detective William Felt of the Ashtabula City Police Department was called to the scene of the fire and searched the premises.  In his career, the detective had been involved in remediating some 200 methamphetamine labs.  During the search, Detective Felt observed a pseudoephedrine package, Heet antifreeze, and a digital scale in the bathroom.  He further observed two suitcases containing chemicals associated with the production of methamphetamine located in a bedroom.  In the same bedroom, the detective found open cold packs, a bottle of drain cleaner, a light bulb converted into a methamphetamine pipe, and lithium batteries.  In the master bedroom, the detective located a mailing envelope labeled with appellant's name and his aunt's address.  A receipt from Discount Drug Mart for the purchase of a cold pack and three

3

Zippo lighter fluid entries was found in the envelope. Detective Felt also searched appellant's vehicle, which remained at the crime scene. In the car, he discovered Coleman fuel cans. According to the detective, the bottles found in the two sinks were akin to those used in a "one-pot method" methamphetamine lab.

{¶8} Detective Felt interviewed appellant at the Ashtabula City Police Department. Appellant claimed he did not remember where he was on December 6 or 7; he asserted, however, he was at his aunt's house on East 45th Street in Ashtabula, Ohio on December 8. Appellant also indicated he was at his uncle's house during the same time period. When the detective requested him to explain the conflict, appellant explained he was confused. Detective Felt later determined appellant was at neither residence on December 8, 2012.

{¶9} Detective Felt obtained video footage from Discount Drug Mart from the date printed upon the receipt. The video shows appellant and his mother, Pamela Payne, in the store. Pamela Payne is seen purchasing the items on the receipt and appellant can be seen looking at cold packs.

{¶10} Jennifer Acurio, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, tested the light bulb/smoking device from the crime scene. She determined it contained a trace amount of methamphetamine.

{¶11} Appellant was indicted on February 28, 2013 on one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, a felony of the second degree; one count of illegal manufacture of drugs, in violation of R.C. 2925.04, a felony of the first degree; and one count of aggravated

4

arson, in violation of R.C. 2909.02, a felony of the first degree. Appellant pleaded not guilty to the charges.

{¶12} After a trial by jury, appellant was found guilty on each count. The trial court determined the three counts merged for purposes of sentencing, and the state elected to proceed to sentence on the aggravated arson count. Appellant was sentenced to a ten-year term of imprisonment. This appeal follows.

{¶13} Appellant's first assignment of error provides:

{¶14} "The jury's verdict is against the manifest weight of the evidence and sufficiency of the evidence."

{¶15} In a criminal appeal, a verdict may be overturned if it is against the manifest weight of the evidence or because there is insufficient evidence to support the conviction. In the former, an appellate court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. *Id.* at 386-387. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational jury have found the essential elements of the crime proven beyond a reasonable doubt? *Id.* at 390 (Cook, J., concurring); *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶16} Appellant challenges the weight and sufficiency of the evidence upon which the jury's guilty verdicts were premised. The jury found appellant guilty of aggravated arson, illegal assembly or possession of chemicals for the manufacture of

5

drugs, and illegal manufacture of drugs. The court merged the three crimes, however, and the state elected to proceed to sentencing on the aggravated arson count. Due to the merger, appellant was convicted of only aggravated arson.

{¶17} The Supreme Court of Ohio has defined a conviction as the combined occurrence of a finding of guilty and the imposition of a sentence. *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979). In this case, there was more than one finding of guilty, but there was only one conviction involving the imposition of a sentence. Because appellant was only convicted of aggravated arson, there are no convictions for illegal manufacture of drugs or illegal assembly or possession of chemicals for the manufacture of drugs to vacate. *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶24; *State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶54. We therefore need only consider the evidential weight and sufficiency of the aggravated arson conviction.

{¶18} R.C. 2902.02(A)(1) provides: "No person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]"

{¶19} Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶20} In this case, the state submitted no direct evidence that appellant was involved in the ignition of the fire. It is undisputed that appellant was in the home when the fire started. The evidence of his presence in the apartment, without more, is

insufficient, to connect him to the creation of the fire because he was not alone; Vernotta Jiminez, the actual denizen of the apartment, was also in the residence. And, because there was no direct evidence presented indicating Vernotta was involved in the ignition of the fire, there was nothing to support a circumstantial inference that appellant was even complicit in the fire's ignition.

{¶21} Further, investigators determined the fire started in the kitchen, but the cause of the blaze went undetermined. And, although there was equipment and ingredients for making methamphetamine, all of the ingredients and nearly all of the equipment were located in either the bathroom or a back bedroom, away from the kitchen. The only piece of evidence in the kitchen was an over-pressurized 20 ounce plastic bottle. Even assuming the bottle was, at some point used for the production of methamphetamine, the evidence did not suggest the bottle was ruptured or otherwise damaged in such a way to suggest it was instrumental in causing the fire.

{¶22} It is well-settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, *supra*, paragraph one of the syllabus. Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established. *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven." *State v. Nevius,* 147 Ohio St. 263 (1947). It consequently follows that "when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may

7

be rationally inferred according to common experience." *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶34.

{¶23} A conviction, however, may not be premised upon the "stacking of inferences." When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper. *See e.g. State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶27.

{¶24} Here, the circumstantial evidence supports the inference that, based upon the equipment, ingredients, and various residues found on some of the equipment, methamphetamine production had occurred, at some point, in the apartment. The circumstantial evidence that a methamphetamine lab was, at some point, in use, is insufficient, however, without more, to establish that a lab was operating prior to the fire and somehow caused the fire. And, even if the evidence were sufficient to sustain the foregoing inference, there was no evidence to support the conclusion that appellant was operating or complicit in the operation of the lab when, through a volatile chemical reaction or otherwise, the fire was started.

{¶25} The statute required the state to establish, beyond a reasonable doubt, that appellant, by means of fire or explosion, knowingly created a substantial risk of serious physical harm to another person or persons. Some evidence was presented that the operation of a methamphetamine lab creates a substantial risk of causing serious physical harm to others. The state failed, however, to establish that a fire or explosion, occasioned by a methamphetamine lab, caused the apartment to catch on fire; and, moreover, the state failed to establish appellant was operating or complicit in

8

operating a lab when it purportedly set the kitchen ablaze. To accept the evidence in this case as proof of the underlying conviction would require this court to assume (1) appellant was producing, or was complicit in the production of methamphetamine when the fire started and (2) the fire, that was admittedly of an undetermined cause, was the result of such methamphetamine production gone awry. One cannot make this inferential connection without impermissibly stacking an inference upon an inference. The conviction for aggravated arson was therefore premised upon insufficient evidence and must be vacated.

{¶26} One final procedural point must be addressed. The state's election to proceed to sentencing on the aggravated arson count did not eliminate the jury's verdicts of guilty on the remaining counts of illegal manufacture of drugs or illegal assembly and possession of chemicals for the manufacture of drugs. In *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, the Supreme Court of Ohio was asked to determine, inter alia, what R.C. 2941.25(A), Ohio's merger statute, prohibits. In response to this question, the Court observed the statue precludes a defendant only from being *punished* for allied offenses. *Whitfield*, at ¶27. It does not, however, eliminate a jury's guilty verdict(s) on any remaining counts that were the subject of the merger process. The Court stated "the determination of a defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing." *Id.* It therefore follows that when a disputed conviction is premised upon insufficient evidence and is subsequently vacated, the reversal of that conviction does not function to vacate or eliminate a jury's verdict for crimes the

9

defendant was found guilty, but of which a defendant was not convicted due to the merger exercise.

{¶27} Given the foregoing, even though appellant's conviction for aggravated arson must be reversed and vacated, the guilty verdicts for illegal manufacture of drugs or illegal assembly and possession of chemicals for the manufacture of drugs remain viable. Because, however, appellant was not sentenced on illegal manufacture of drugs or illegal assembly and possession of chemicals for the manufacture of drugs, he was not convicted of these crimes. "'Absent the imposition of sentence on each and every offense for which [a defendant] was convicted, there is no final appealable order.'" *State v. Garner*, 11th Dist. Trumbull No. 2002-T-0025, 2003-Ohio-5222, ¶7 quoting *State v. Collins*, 8th Dist. Cuyahoga No. 79064, 2001 Ohio App. LEXIS 4666 (Oct. 18, 2001). Without a final, appealable order, this court does not have jurisdiction to address the weight or sufficiency of the illegal manufacture of drugs or illegal assembly and possession of chemicals for the manufacture of drugs counts. We therefore hold this matter must be remanded to the trial court for the state to, once again, elect the count on which it wishes to proceed to sentencing. Upon election, the trial court shall impose its sentence, at which time the new order of conviction will be final and appealable.

{¶28} Appellant's first assignment of error is sustained as it relates to the aggravated arson charge. The remaining aspects of appellant's first assignment of error, relating to the counts for illegal manufacture of drugs or illegal assembly and possession of chemicals for the manufacture of drugs, are unripe for review at this time.

{¶29} Appellant's second assignment of error provides:

10

**{¶30}** "The trial court erred when it failed to address appellant's concerns about his appointed counsel's performance and found that appellant had made an effective waiver of counsel."

**{¶31}** Because the issue raised in this assignment of error is capable of repetition in a potential later appeal, we shall address its merits.

**{¶32}** Appellant contends the trial court failed to adequately inquire into his concerns regarding his trial counsel's defense before concluding appellant knowingly, intelligently, and voluntarily waived his right to counsel during trial. He further asserts the court erred when it failed to give him the opportunity to obtain different counsel. We do not agree.

**{¶33}** The Sixth and Fourteenth Amendments to the United States Constitution vouchsafes a state criminal defendant the constitutional right to represent himself if he voluntarily, knowingly, and intelligently elects to do so. *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806 (1975). "To establish an effective waiver of counsel, the trial court must determine whether the defendant fully understands and intelligently relinquishes his right to counsel." *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶45 citing *Gibson*, *supra*, paragraph two of the syllabus.

**{¶34}** Near the end of the prosecution's case-in-chief, appellant interrupted his attorney's cross-examination of Detective Felt and expressed his desire to remove his attorney as counsel. He specifically stated that, although his lawyer was a good attorney, he did not agree with the strategy counsel had adopted to defend him. Judge Yost responded:

11

**{¶35}** [Y]ou have a right to be represented by a lawyer throughout every stage of these proceedings, regardless of the evidence and regardless of whether you're not guilty or guilty. And where you cannot afford to hire a lawyer you have a right to have one appointed by the Court. You have had a lawyer appointed by the Court to represent you in this case. This is Mr. Fairchild, and I guess we are almost finished with the State's side of the case at this point in time, with representing you. But if you cannot afford to hire a lawyer, then you're in a situation where you're going to have to allow Mr. Fairchild to continue with the representation, unless you're sure that you want to discharge him from any representation. But if that happens, the only other choice you have is to go forward and represent yourself.

**{¶36}** Appellant asked the court how long he would be given to retain a different attorney. The court explained because trial had commenced and appellant had already accepted court-appointed representation, he must either retain current counsel or go forward representing himself. The court urged appellant to allow appellant's current counsel to proceed due to the potential difficulties he might encounter managing the procedural technicalities of the litigation. The judge, however, emphasized, that the decision was appellant's to make. After further explaining the ramifications of self-representation, *and* giving appellant the opportunity to use a phone to try and enlist a new attorney, which he was unable to do, appellant concluded he would proceed pro se for the remainder of the trial. The court nevertheless determined appellant's former

12

counsel should remain at the defense table to answer any potential questions appellant might have relating to trial matters and the like. The dialogue between the court and appellant, as well as appellant's vehemence in moving forward without counsel that was already appointed, demonstrates his decision to waive counsel was knowing, voluntary, and intelligent.

**{¶37}** Notwithstanding this conclusion, a court may be required to appoint new counsel under certain circumstances. The facts of this case, however, demonstrate the court did not err in failing to explore this possibility.

**{¶38}** It is well-established that an indigent defendant's right to counsel does not extend to counsel of the defendant's choice, *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93 (1965). Moreover, one's right to counsel does not require appointed counsel to develop and share "a meaningful relationship" with his or her client. *State v. Blankenship*, 102 Ohio App.3d 534, 558 (12th Dist.1995), citing *Morris v. Slappy*, 461 U.S. 1, 13 (1983). Grounds for appointment of new counsel exist only upon "a showing of good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust result." *Blankenship, supra,* citing *State v. Pruitt*, 18 Ohio App.3d 50, 57 (8th Dist.1984). Upon such a showing, "failure to honor the defendant's timely request amounts to a denial of effective assistance of counsel." *Id.* at 57.

**{¶39}** In this case, appellant did not request that new counsel be appointed. Moreover, appellant's decision to remove his defense attorney occurred during cross-examination of the state's final witness. In effect, therefore, it would be difficult to

13

conclude, even if appellant had requested new counsel, that the request would be timely.

{¶40} Finally, appellant failed to clearly specify the exact nature of the problem he had with his appointed counsel. In *State v. Deal*, 17 Ohio St.2d 17 (1969), the Ohio Supreme Court stated, "[w]here, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel * * *, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." *Id.* at syllabus. This "'limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.'" *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶68, quoting *State v. Carter*, 128 Ohio App.3d 419, 423, (4th Dist.1998).

{¶41} In this case, appellant merely asserted a general objection to his defense counsel's strategy in defending him. In seeking to remove his attorney, he observed "I need someone who's gonna fight for me and prove my innocence. [Not] [s]omeone who's gonna lead the State's case against me." Appellant explained he had "asked [counsel] to do stuff multiple times and he wouldn't do it. Stuff that I believe is in my defense and would prove my innocence, and I can't continue with him." Although appellant had the opportunity to expand on the actual features of counsel's representation to which he objected, i.e., the "stuff," he did not do so. And, ultimately, after the court, over the course of several exchanges, underscored appellant had the right to proceed on his own, appellant chose to represent himself. Given the generality of appellant's complaint, we hold the court adequately explored any issues appellant had with counsel.

{¶42} Under the circumstances, the record shows the trial court ensured appellant knowingly, intelligently, and voluntarily elected to proceed pro se. Moreover, appellant's vague objections to trial counsel's strategy were insufficient to trigger any further inquiry by the judge. After reiterating his general dissatisfaction with counsel's approach to his defense, appellant ultimately chose to go forward on his own. We find no error in the manner in which the court managed this issue.

{¶43} Appellant's second assignment of error is without merit.

{¶44} For the reasons discussed above, the judgment of the Ashtabula County Court of Common Pleas is reversed and appellant's conviction for aggravated arson is vacated. Based upon our disposition of appellant's first assignment of error, however, the matter is remanded to the trial court to vacate appellant's conviction for aggravated arson and for the state to elect the counts on which it desires to proceed to sentencing. After electing, the trial court should conduct a new sentencing hearing and enter a conviction accordingly.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.