[Cite as *State v. Payne*, 2016-Ohio-1301.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0036** |
| TYLER S.D. PAYNE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CR 25.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michelle M. French,* Law Offices of Michelle M. French, LLC, P.O. Box 293, Jefferson, OH 44047 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Tyler S.D. Payne, appeals from the judgment of the Ashtabula County Court of Common Pleas, convicting him of illegal manufacture of drugs. We affirm the judgment.

{¶2} On December 8, 2012, Richard Loveridge was visiting 3228 Altman Court, an apartment managed by the Ashtabula Metropolitan Housing Authority ("AMHA"). Vernotta Jiminez was the resident of the apartment and appellant spent significant time

at the residence. Loveridge was repairing appellant's car, which he regularly did in exchange for methamphetamine. After fixing the vehicle, Loveridge went into a neighboring apartment to visit a friend, Brittany Gregory. In addition to obtaining drugs for his work as a mechanic, Loveridge testified he was waiting for either Vernotta or appellant to deliver a key to him. The purpose of the key was not disclosed.

{¶3} After visiting with Brittany, Loveridge left her apartment and proceeded to Vernotta's home. As he approached Vernotta's apartment, however, he noticed smoke. He entered the apartment, and observed the kitchen engulfed in flames. Loveridge observed Vernotta as well as appellant in the apartment. Loveridge, realizing he had drugs and needles on him, subsequently left the scene in his vehicle accompanied by appellant, Vernotta, and another woman named Kaitlyn. The fire caused $83,000 in damages to AMHA property.

{¶4} Security Technologies provided a full service security system for the AMHA's properties. According to Larry DeGeorge, owner of the company, a surveillance camera was monitoring Altman Court on December 8, 2012. Once the fire was apparent from the camera, a dispatcher notified authorities. Video footage of the fire was saved and forwarded to the police.

{¶5} Ashtabula City Fire Chief, Ronald Pristera, responded to the fire. Once the fire was extinguished, Chief Pristera noticed a 20-ounce bottle in the kitchen sink with water running over it. The bottle appeared over-pressurized. He further located a similar over-pressurized bottle in the bathroom sink with water running over it; upon later inspection, this bottle had ammonium nitrate pearls at its bottom. Ammonium nitrate pearls, extracted from cold packs, are frequently used in the production of

2

methamphetamine. Further, an air-purifying respirator was located in the bathroom of the apartment; lighter fluid and drain cleaner was also found in the bathroom. Cold packs and Sudafed were located in the bedroom.

{¶6} Lieutenant John Paul, a fire investigator with the Ashtabula City Fire Department, investigated the cause of the fire. Lieutenant Paul concluded the fire had originated in the kitchen. The lieutenant eliminated cooking or electricity as possible causes. Officially, however, the cause of the fire was ruled "undetermined."

{¶7} Detective William Felt, of the Ashtabula City Police Department, was called to the scene of the fire and searched the premises. In his career, the detective had been involved in remediating some 200 methamphetamine labs. During the search, Detective Felt observed a pseudoephedrine package, HEET gas-line antifreeze, and a digital scale in the bathroom. He further observed two suitcases containing chemicals associated with the production of methamphetamine located in a bedroom.

{¶8} In the same bedroom, the detective found open cold packs; a bottle of drain cleaner; a light bulb converted into a methamphetamine pipe; and lithium batteries. In the master bedroom, the detective located a mailing envelope labeled with appellant's name and his aunt's address. A receipt from Discount Drug Mart for the purchase of a cold pack and three Zippo lighter-fluid entries was found in the envelope. Detective Felt also searched appellant's vehicle. In the car, he discovered Coleman fuel cans. According to the detective, the bottles found in the two sinks were akin to those used in a "one-pot method" methamphetamine lab.

{¶9} Detective Felt interviewed appellant at the Ashtabula City Police Department. Appellant claimed he did not remember where he was on December 6 or

3

7; he asserted, however, he was at his aunt's house on East 45th Street in Ashtabula, Ohio on December 8. Appellant also indicated he was at his uncle's house during the same time period. When the detective asked him to explain the conflict, appellant explained he was confused. Detective Felt later determined appellant was at neither residence on December 8, 2012.

{¶10} Detective Felt obtained video footage from Discount Drug Mart from the date printed upon the receipt. The video shows appellant and his mother, Pamela Payne, in the store. Pamela Payne is seen purchasing the items on the receipt and appellant can be seen looking at cold packs.

{¶11} Jennifer Acurio, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, tested the light bulb/smoking device from the crime scene. She determined it contained a trace amount of methamphetamine.

{¶12} Appellant was indicted on February 28, 2013, on one count of aggravated arson, in violation of R.C. 2909.02, a felony of the first degree; one count of illegal manufacture of drugs, in violation of R.C. 2925.04, a felony of the first degree; and one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, a felony of the second degree. Appellant pleaded not guilty to the charges.

{¶13} After a trial by jury, appellant was found guilty on each count. The trial court determined the three counts merged for purposes of sentencing and the state elected to proceed to sentence on the aggravated arson count. Appellant was sentenced to a ten-year term of imprisonment.

**{¶14}** Appellant appealed his conviction and, in *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304 ("*Payne I*"), this court held appellant's conviction for aggravated arson was not supported by sufficient evidence. *Id.* at ¶25. This court further held that, because the state was entitled to, but had not yet elected to proceed to sentencing on one of the remaining counts, further review of appellant's conviction was not ripe for review. *Id.* at ¶26-27. This court proceeded to analyze appellant's assignment of error relating to his waiver of counsel because it was capable of repetition in a later appeal. After considering his argument, this court determined that the assigned error lacked merit. *Id.* at ¶42.

**{¶15}** On July 7, 2015, the trial court vacated appellant's conviction for aggravated arson, pursuant to *Payne I*. The court merged the remaining counts and the state elected to proceed to sentencing on the illegal-manufacture-of-drugs count. Appellant was sentenced to an eight-year term of imprisonment. He now appeals that judgment.

**{¶16}** Appellant's first assignment of error provides:

**{¶17}** "The trial court erred to the prejudice of the defendant's Rule 29 motion for acquittal; furthermore, the jury's verdict was against the manifest weight of the evidence."

**{¶18}** In a criminal appeal, a verdict may be overturned if it is against the manifest weight of the evidence or because there is insufficient evidence to support the conviction. In the former, an appellate court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. *State v. Thompkins*, 78

Ohio St.3d 380, 387 (1997). In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. *Id.* at 386-387. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational jury have found the essential elements of the crime proven beyond a reasonable doubt? *Id.* at 390 (Cook, J., concurring); *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶19} Appellant challenges the weight and sufficiency of the evidence upon which the illegal-manufacture-of-drugs conviction was premised. To obtain a conviction for illegal manufacture of drugs, the state was required to prove, beyond a reasonable doubt, that appellant knowingly manufactured or otherwise engaged in any part of the production of methamphetamine. *See* R.C. 2925.04(A).

{¶20} Appellant asserts that the state failed to produce sufficient, credible evidence that methamphetamine was being manufactured in the apartment, let alone that appellant was engaged in any part of the manufacture of methamphetamine. We do not agree.

{¶21} At trial, Detective Felt testified he had disassembled approximately 200 methamphetamine labs. He testified regarding the equipment usually used in the manufacture of the drug. Specifically, he noted 20-ounce sport drink or soda bottles are utilized as vessels to hold the ingredients for the one-pot method of manufacture. The chemicals commonly used in this method are: pseudoephedrine; cold packs containing ammonium nitrate; pickling salt; Zippo liter fluid; Coleman lantern fuel or HEET brand gas-line antifreeze (used as a solvent); lithium metal, usually removed from lithium batteries with a pipe cutter and pliers, to catalyze the chemical reaction; and drain

6

cleaner (which contains the chemical sodium hydroxide that aids in the reaction). Moreover, the detective testified coffee filters are used to separate the chemical sludge from the final product.

{¶22} The detective testified that the chemicals, when blended, produce an exothermic reaction in the bottle, which produces high heat and pressure. Thus, in the course of manufacturing the drug, the cap of the bottle must be gradually unscrewed to relieve the pressure to avoid an explosion.

{¶23} During Detective Felt's search of the apartment, he observed the following, most of which was located in the bedrooms of the apartment: an empty, pseudoephedrine package; HEET gas-line antifreeze; two packages of open, cold-compress bags that still contained ammonium nitrate pearls; two bottles of drain cleaner; a butane lighter fluid can; a plastic bag containing Energizer lithium batteries; at least two "scored" or "husked" lithium battery shells; two sets of pipe cutters and a pair of pliers; coffee filters; several pre-measured plastic bags containing pickling salts; two, over-pressurized 20-ounce bottles, one of which contained ammonium nitrate pearls; an envelope, bearing appellant's name that had a receipt in it from Discount Drug Mart for the purchase of a cold pack and three Zippo lighter fluid containers; and a light bulb converted into a methamphetamine pipe. And, in appellant's vehicle, Felt discovered Coleman lantern fuel cans, each with "some product" remaining in them.

{¶24} Detective Felt observed the video footage from Discount Drug Mart from the date printed on the receipt found in the envelope. The video depicted appellant and his mother in the store; appellant's mother is seen purchasing the items on the receipt, while appellant is looking at cold packs.

7

{¶25} Chief Pristera echoed much of the detective's testimony, noting, upon arriving at the scene, he observed a 20-ounce bottle in the bathroom sink with water running over it. The bottle appeared over-pressurized. A similar, over-pressurized bottle was found in the kitchen sink. Pristera further observed an air purifying respirator located in the bathroom as well as lighter fluid and drain cleaner. In the bedroom, Pristera noticed cold packs and a package of pseudoephedrine.

{¶26} Finally, Mr. Loveridge testified he regularly does repair work for appellant who paid him with methamphetamine. He further testified he would receive the methamphetamine from appellant at Vernotta Jiminez' apartment, where appellant was seen "often." On the day of the fire, Loveridge testified he was at Vernotta Jiminez' apartment complex to fix appellant's car in exchange for methamphetamine. After he finished the work, he noticed smoke issuing from Jiminez' apartment. He entered the burning residence and observed appellant with Jiminez. The group subsequently left the residence together

{¶27} The foregoing facts provide direct and circumstantial evidence to support the conclusion that methamphetamine had been manufactured in the apartment if not on the day of the fire, at some point prior to the fire; moreover, it provides credible circumstantial evidence that appellant was a party to or complicit in the manufacture of methamphetamine in the apartment, whether on the date of the fire or at some point prior.

{¶28} Appellant maintains our previous opinion in *Payne I* undercuts these conclusions. It does not.

**{¶29}** In *Payne I,* this court held appellant's conviction for aggravated arson was not supported by sufficient evidence. In so holding, we underscored that the state failed to produce any evidence that (1) the fire was caused by methamphetamine production or (2) appellant was manufacturing or complicit in the manufacture of methamphetamine *when the fire started.* These points do not negate the inference, drawn from the evidence outlined in this opinion, that appellant had engaged in the manufacture of methamphetamine or was complicit in the manufacture of methamphetamine in the apartment *at some point.* To the contrary, in light of the chemicals, the equipment, and the receipt, all found in the apartment, as well as the drug store video and Loverage's testimony, we conclude the manifest weight of the evidence supports the inference that appellant had, at the very least, engaged in some aspect of the manufacture of methamphetamine in Vernotta Jiminez' apartment. We therefore hold appellant's convictions are supported by sufficient evidence as well as the weight of the evidence.

**{¶30}** Appellant's first assignment of error is without merit.

**{¶31}** Appellant's second assignment of error provides:

**{¶32}** "The trial court erred when it failed to address appellant's concerns about his appointed counsel's performance and found that appellant had made an effective waiver of counsel, in the middle of the trial when the jury was already impaneled and sworn and had heard a substantial amount of evidence."

**{¶33}** In *Payne I,* appellant assigned the foregoing as error. Even though this court reversed the matter due to insufficient evidence on the aggravated arson charge, the panel nevertheless addressed appellant's argument because it was capable of repetition. In doing so, this court found appellant's argument without merit, holding:

9

**{¶34}** Under the circumstances, the record shows the trial court ensured appellant knowingly, intelligently, and voluntarily elected to proceed pro se. Moreover, appellant's vague objections to trial counsel's strategy were insufficient to trigger any further inquiry by the judge. After reiterating his general dissatisfaction with counsel's approach to his defense, appellant ultimately chose to go forward on his own. We find no error in the manner in which the court managed this issue. *Id.* at ¶42.

**{¶35}** Because this court previously addressed and ruled on appellant's argument, his second assignment of error lacks merit.

**{¶36}** For the reasons discussed above, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.