[Cite as *In re K.E.W.*, 2016-Ohio-7844.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

IN THE MATTER OF:  K.E.W.,       :        **O P I N I O N**
DELINQUENT CHILD.

                                        :

                                        :        **CASE NO.  2016-L-020**

                                        :

                                        :

Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2015 DL 01685.

Judgment: Reversed and vacated.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee-State of Ohio).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH  44077 (For Appellant-K.E.W.).

CYNTHIA WESTCOTT RICE, P.J.

{¶1}    Appellant, K.E.W., appeals from the judgment of the Lake County Court of Common Pleas, Juvenile Division, finding the charges of robbery, assault, and criminal trespass true.  At issue is whether the state produced sufficient evidence to support the trial court's determination as it relates to the robbery charge.  For the reasons discussed in this opinion, we reverse the trial court's judgment and vacate the finding on the robbery charge.

**{¶2}** On June 22, 2015, 20-year-old Kendra Renko made arrangements to purchase $25 of marijuana from an acquaintance, Nevada Choate. Choate drove to Renko's Mentor-on-the-Lake apartment complex, accompanied by Tina Milos, in the front passenger seat; Anthony Mercurio, in the rear, driver's-side seat; and appellant, in the rear, passenger-side seat. At the time of the incident, appellant was Mercurio's girlfriend and the only juvenile in the vehicle.

**{¶3}** When Choate arrived, Renko approached the passenger side of the SUV and handed $25 to Milos, who passed the money to Choate. Choate then placed a scale on the armrest of the vehicle to weigh Renko's marijuana. Before Renko was given the marijuana, appellant exited the vehicle and struck her in the back of the head. Renko turned and ran toward her apartment; as appellant pursued, Renko stated appellant scratched her on the arm. When Renko entered the first set of doors, she pushed appellant to keep her out of the building. Renko was able to open a second, secured door and escape into the apartment building. When she entered her apartment, Renko advised her boyfriend of the incident. Renko's boyfriend ran outside, only to observe Choate's vehicle driving away.

**{¶4}** One of the apartment complex's maintenance workers witnessed the incident while she was cleaning a vacant apartment. According to the employee, appellant exited the vehicle and struck Renko in the head three times. Upon witnessing the assault, the employee ran outside and observed appellant re-entering the vehicle as it drove away.

**{¶5}** On November 13, 2015, a complaint was filed against appellant charging her with robbery, a felony of the second degree if committed by an adult, in violation of

R.C. 2911.02(A)(2); assault, a misdemeanor of the first degree if committed by an adult, in violation of R.C. 2903.13(A); and criminal trespass, a misdemeanor of the fourth degree if committed by an adult, in violation of R.C. 2911.21(A)(2). A detention hearing was held, and appellant entered a plea of "not true" to each count.

{¶6} The matter proceeded to a dispositional hearing. Various witnesses were called and attested to the aforementioned facts. Renko further testified she was familiar with everyone in the vehicle, with the exception of appellant. Defense counsel indicated, however, that appellant was familiar with Renko. Defense counsel suggested that appellant was agitated with Renko because she believed Renko was romantically involved with Mercurio. No evidence was advanced to support this theory and Renko specifically denied any such connection, testifying she knew Mercurio simply as an acquaintance from high school.

{¶7} After hearing the evidence, the trial court found each of the counts in the complaint to be true. Appellant was ordered to serve, among other dispositions, an indefinite term in the Ohio Department of Youth Services that was suspended; a term of 90 days in the Lake County Detention Facility that was suspended with credit for time served; home detention; and indefinite probation. She now appeals and assigns the following error:

{¶8} "The trial court erred to the prejudice of the delinquent child-appellant when it denied her Crim.R. 29(A) motion for judgment of acquittal, in violation of her rights to fair trial and due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution."

{¶9} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶10} Appellant was charged with robbery, in violation of R.C. 2911.02(A)(2). That statute provides:

{¶11} (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶12} * * *

{¶13} (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]

{¶14} The culpable mental state for robbery is satisfied if the state proves the mens rea element of the theft offense. *State v. Tolliver*, 140 Ohio St.3d 420, 424, 2014-Ohio-3744. Pursuant to R.C. 2913.02(A), the statute defining theft offenses, the mental states for theft include both "purposely" and "knowingly." ("No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * *" in any of several specified ways). R.C. 2901.22 defines "purposely" and "knowingly" as follows:

{¶15} (A) A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

4

**{¶16}** (B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶17}** Appellant contends the state failed to establish she was complicit in the alleged robbery because it did not produce evidence to establish anyone in the vehicle was attempting to or committing a theft offense when she commenced the assault. Rather, in appellant's view, the evidence indicates the assault was totally unrelated to the drug transaction and in no way connected to the eventual, coincidental theft. Thus, she concludes the trial court erred when it denied her Crim.R. 29 motion for acquittal on the robbery charge. We agree.

**{¶18}** The evidence demonstrated Renko produced $25; appellant observed Renko tender the money without receiving the marijuana; appellant assaulted Renko and subsequently chased her into the apartment building. There was no evidence presented that appellant, with the purpose of depriving Renko of her money or with the purpose of aiding the others in the theft, assaulted Renko. To the contrary, the evidence demonstrated money was exchanged, Milos commenced weighing marijuana, and the drug deal was proceeding as Renko expected. For reasons unknown, however, appellant struck Renko and, when Renko fled, appellant gave chase. No evidence was adduced to support the ultimate inference that appellant, in attacking Renko, had the specific intent to deprive Renko of her property or aid the others in purposely doing the same.

5

{¶19} It is well-settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. "Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001 , 2014-Ohio-4304, ¶22, citing *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven." *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947). It consequently follows that "when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience." *Windle*, *supra* at ¶34.

{¶20} A conviction, however, may not be based upon the "stacking of inferences." *Payne*, *supra*, ¶23. "When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper." *Id.* *See also State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶27.

{¶21} In this case, the state maintained that appellant assaulted Renko during the commission of a theft and/or did so with the purpose to aid in a theft. This theory, however, requires an inference drawn solely from a separate inference that is not supported by the facts established at trial. The state's theory of the case requires one

6

to assume either (1) that appellant possessed the specific intent to deprive Renko of her money and facilitated the theft via the assault; or (2) that the occupants of the vehicle, prior to meeting Renko, conspired to take Renko's money without giving her marijuana and that the theft would be facilitated through an assault carried out by appellant. The state produced no evidence to support either of these essential assumptions.

{¶22} The evidence demonstrated that Renko handed her money to Milos, who passed it to Choate, who began the process of weighing marijuana in exchange for the $25. The fact that appellant's assault occurred after the exchange of money but before the exchange of marijuana does not, unto itself, support the conclusion that appellant had the specific intent to commit a theft or aid in a theft. Indeed, if the assault was committed for the specific purpose of committing a theft or assisting the others in a theft, it follows that appellant would have re-entered the vehicle once Renko fled; the evidence demonstrated, however, appellant pursued Renko into the apartment building maintaining her aggressive posture during the chase.

{¶23} To convict appellant of robbery, the state was required to present some evidence that appellant, with the purpose to deprive Renko of her money or with the intention to aid the other occupants in purposely depriving Renko of her money, committed the assault. There was no evidence, however, to support the conclusion that appellant or the other occupants had the purpose to deprive Renko of her property. The circumstantial inference that appellant committed the robbery is premised upon the unsupported inference that appellant had the specific intent to commit the theft or aided the other occupants in purposely depriving Renko of her money. Because there was no evidence to support the inference that appellant or the remaining occupants of the

7

vehicle acted with the purpose to deprive Renko of property, the trial court's finding of "true" on the robbery charge is premised upon insufficient evidence. That finding is therefore reversed and vacated.

{¶24} Appellant's assignment of error has merit.

{¶25} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, finding the robbery charge "true" is reversed and that finding is vacated.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____


DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶26} I dissent from the majority's decision to reverse the judgment of the lower court, finding the Robbery charge to be true. Since the timeline of events and the actions of K.E.W. show that the assault of the victim, Kendra Renko, logically was motivated by the intent to commit a theft, the court's finding of true must be upheld.

{¶27} It is initially necessary to emphasize that the challenge raised by K.E.W. on appeal is one of sufficiency of the evidence. Evidence in a sufficiency evaluation must be viewed "in a light most favorable to the prosecution" and this court must review all evidence in a manner consistent with that standard. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In doing so, it is apparent that there is evidence to support the elements of Robbery.

{¶28} To properly evaluate the sufficiency of the evidence, consideration of the timeline of events is critical, as it provides strong evidence of K.E.W.'s intent and purpose to commit a theft offense. Testimony established that K.E.W. was aware that Renko's money had been handed into the vehicle and she did not exit the car until the money was received. She did not wait until the drugs were given to Renko to exit the car and attack her. K.E.W.'s action of committing the assault against Renko allowed her and the others in the car to take the money without any resistance.

{¶29} There is also no evidence in the record to support any other motivation for the assault. Renko testified that she did not know K.E.W. At the time K.E.W. began assaulting her, Renko asked "What are you doing? Who are you?" K.E.W. did not yell accusations at Renko during the assault or otherwise show a particular motivation for it. In short, there was no testimony to establish any reason for the assault of the victim other than the one that logically follows from the facts above: that K.E.W. committed the assault to aid in the theft of the money. Further, K.E.W.'s inconsistent stories point to the fact that she was trying to cover up the seriousness of the crime she committed.

{¶30} While K.E.W.'s brief argues that her "actions in attacking Renko * * * appear to be the result of her belief that Renko had fooled around with her boyfriend," there is nothing in the record to demonstrate this was presented as evidence to the trial court. Renko denied both knowing K.E.W. and having any type of relationship with her boyfriend. Given these denials, the record does not support this alternate theory of K.E.W.'s intent at the time of the assault.

{¶31} Based on the foregoing, it is absolutely reasonable to infer from the evidence and testimony presented that a Robbery did occur. "Intent to commit a

9

criminal offense may be inferred from the surrounding facts and circumstances." *State v. Ortiz*, 6th Dist. Lucas No. L-14-1251, 2016-Ohio-974, ¶ 23, citing *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978). These are the exact circumstances under which intent to commit Robbery can be inferred.

{¶32} The level of proof of intent required by the majority makes it difficult to convict those who do not specifically admit to their intent or discuss it with others, something that is not necessary to show that a Robbery occurred. "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." (Citation omitted.) *In re Washington*, 81 Ohio St.3d 337, 340, 691 N.E.2d 285 (1998). This is exactly how the State proved that the Robbery took place, with sufficient evidence presented through testimony about the circumstances on June 22, 2015. To require more than this type of circumstantial evidence to prove intent would create a high standard that would allow acquittals that are unwarranted under the law.

{¶33} For these reasons, and contrary to the majority's assertions, it is unnecessary to "stack" inferences to reach the foregoing conclusion. The intent to commit the theft can be inferred from the evidence of K.E.W.'s actions. As noted above, inferences are frequently necessary, and acceptable, when determining intent.

{¶34} It also must be made abundantly clear that circumstantial evidence possesses the same value as direct evidence. *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. While the majority recognizes this fact, it does not apply this principle properly to

10

the circumstances present in this case. Not only did K.E.W. attack the victim after the money was received, but she also chased her away from the car and back into the apartment building, which ultimately caused her to abandon both her money and the drugs she was trying to purchase. The timing of the offense discussed above provides the circumstantial evidence necessary to prove that the attack was committed for the purpose of facilitating a theft offense.

{¶35} The focus on whether all of the foregoing evidence weighed against a conviction may be proper for a manifest weight challenge, but does not suffice when viewing the evidence in a light most favorable to the State, which the majority fails to do.

{¶36} For the foregoing reasons, I respectfully dissent from the majority's opinion and would affirm the judgment of the lower court, finding the Robbery charge to be true.