[Cite as *State v. Rohn*, 2020-Ohio-6918.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-L-006** |
| TERRY D. ROHN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 2019 CR 000455.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor; *Jenny B. Azouri* & *Jennifer A. McGee*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Justin J. Mackin*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Terry D. Rohn ("Rohn"), appeals a judgment in the Lake County Court of Common Pleas, following a jury trial, sentencing him to a term of 37 years to life in prison and a Tier III Sex Offender status classification for multiple counts of Rape and Sexual Battery. We affirm the trial court's judgment.

{¶2} On May 15, 2019, Rohn was indicted on multiple counts relating to an alleged ongoing sexual relationship with a minor child, J.T., starting when J.T. was 9 years old and continuing for several years thereafter. As stated in the indictment, the Grand Jury alleged that Rohn continually engaged in (1) rape by force or threat of force and (2) sexual battery, as a person in loco parentis to J.T., between February 2001 and May 2007. The indictment also alleged that Rohn had allowed J.T. to view a live performance harmful to juveniles, which constituted one count of Disseminating Matter Harmful to Juveniles.

{¶3} A jury trial began on October 29, 2019. The state of Ohio called various witnesses, including the alleged victim, the detectives who conducted the investigation once the allegations were reported, and an expert on child sexual abuse.

{¶4} Detective William Smith and Detective Don Ticel testified about their work investigating the allegations. Detective Ticel was initially assigned the file for J.T.; he conducted interviews with J.T. and others and also was present to record two controlled calls between J.T. and Rohn. Detective Smith received the file from Detective Ticel, and he also conducted interviews.

{¶5} J.T. testified at great length about her upbringing and the years of alleged sexual abuse. She stated that she began living with her biological father and stepmother in a house on Grant Street after her grandfather died when she was 9 years old. She indicated that both her father and stepmother were physically and mentally abusive to her and each other. Also, she testified that Rohn moved into their home shortly after she began living there, and he eventually moved into the basement for a short period of time before moving to several different locations over the years.

Because of her abusive relationship with her father and stepmother, J.T. stated that she received love and support from Rohn throughout her childhood. She claimed that he was like a father figure to her and that she trusted him more than her own father. Rohn would also watch J.T. when her parents were not home.

{¶6} Regarding the charges, J.T. was presented with academic records, organized in a timeline by year, which she utilized to remember dates and locations where she claimed the rape and sexual battery occurred. She often referred to which grade level, school, and teacher she had as a way to determine how old she was during different incidences of sexual assault by Rohn. The records she relied on to remember the times and dates were submitted as evidence by the state. Using the records, she recounted various instances of rape and sexual battery at two of Rohn's residences, as well as beginning at her father's home when she was 9 years old.

{¶7} She testified in great detail about the first time she was raped by Rohn, including describing all of her surroundings and the circumstances of the night. J.T. testified that Rohn woke her from her bunk bed one night at the Grant Street residence and led her downstairs. There, he put on a video of himself and a girlfriend engaging in sexual activity including intercourse. J.T. stated that Rohn began touching her genitals, engaged in sexual intercourse with her, and then used a white shirt to clean up the blood. She recalled that she was frozen with fear during the incident. Also, she testified that her stepmother was at the top of the stairs and witnessed the incident. On cross examination, J.T. conceded that she never told either detective—or any other person— that her stepmother had witnessed the incident. She also appeared to confuse dates and events regarding her age and class level when challenged.

{¶8} J.T. testified to two additional residences where she claimed Rohn either touched her genitals or had sexual intercourse with her. K.G., the mother of one of J.T.'s half-siblings, also testified and corroborated some of the allegations. She stated J.T. had confided in her that Rohn had raped her "more times than [she] could count," prior to her going to report the abuse.

{¶9} Diane Daiber ("Daiber"), a medical professional and expert witness on childhood sexual abuse, testified generally regarding sexual abuse and its effects on young victims. She stated that victims often do not come forward until much later after the abuse. She also explained that sexual abuse during certain periods of a child's development can have a harmful effect on hormone production, and chemical imbalances can often lead to memories of the incidents being incomplete or inaccurate. She compared it to a person having "a bunch of post-it notes" with details, and then trying to put them all together in order years later. Also, she testified regarding the effects of hormone production on physical signs of rape in young adolescents. Daiber conceded that she had never examined or spoken to J.T., that she had no direct or personal knowledge about J.T., and that the testimony she offered was solely a general summation based on her knowledge, experience, and expertise in the field of childhood sexual abuse. No direct medical evidence from J.T. was submitted at trial.

{¶10} During Detective Ticel's testimony, the two controlled calls made by J.T. to Rohn were submitted as evidence and played for the jury. The calls are each approximately 45 minutes in length. During the calls, J.T. discusses various instances of sexual battery and rape with Rohn. J.T. makes statements such as "why did you take my virginity when I was 9" and "you took that from me, I'll never get that back." Rohn's

reactions range from "it is what it is," "what do you want me to do," and "I can't change the past," to expressions of regret, stating that he "has to live" with what he did in the past. During the second controlled call, Rohn states that he does not remember the vast majority of times J.T. claims that he raped or touched her, because he was on a combination of drugs and alcohol to ease knee pain for a majority of the time in question and often forgot long periods of time. However, during the call he specifically recalls one instance in which he stated he had sex with J.T. in the basement of the Grant Street residence when she was a child.

{¶11} At the end of the state's case-in-chief, the defense made a motion for acquittal under Criminal Rule 29 in chambers, which was denied. The defense then rested without presenting any witnesses and renewed the Rule 29 motion, which was again denied. After deliberations, on November 1, 2019, the jury found Rohn guilty of seven of the ten indicted counts—four counts of Rape and three counts of Sexual Battery.

{¶12} A sentencing hearing was held on December 16, 2019. The trial court reviewed, among other things, a presentence investigation report from the Department of Adult Probation, statements from J.T. and counsel for Rohn, the statutory sentencing factors, and the recommendation made by the state of 40 years to life. Considering all of the aforementioned, the trial court merged the Sexual Battery counts with the corresponding Rape counts and ordered the following sentence:

(1)     Count 1: Rape (R.C. 2907.02(A)(1)) (F-1) – 10 years to life;

(2)     Count 3: Rape (R.C. 2907.02(A)(2)) (F-1) – 9 years;

(3)     Renumbered Count 6: Rape (R.C. 2907.02(A)(2)) (F-1) – 9 years;

5

(4)    Renumbered Count 8: Rape (R.C. 2907.02(A)(2)) (F-1) – 9 years.

{¶13} The trial court also ordered the sentence to be served consecutively, for a total term of 37 years to life imprisonment.  The length of Rohn's sentence and the imposition of consecutive sentencing are not at issue in the present appeal.

{¶14} Rohn filed a timely notice of appeal and raises six assignments of error for our review.  For clarity, we consider some of the assignments out of order.

{¶15} Rohn's first assignment of error states:

[1.] DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS UNDER THE FIFTH AND THE FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION TO HAVE ADEQUATE NOTICE OF ALL OF THE ESSENTIAL ELEMENTS OF THE ALLEGED OFFENSES SET FORTH IN AN INDICTMENT.

{¶16} In his first assignment of error, Rohn argues the trial court committed plain error for failing to dismiss a facially defective indictment, in violation of Crim.R. 7(B), insomuch as the indictment failed to allege basic facts upon which the status "in loco parentis" was based with regard to the three Sexual Battery counts.

{¶17} Under Crim.R. 12(C)(2), defenses and objections based on defects in the indictment "must be raised before trial."  Failure to do so "shall constitute waiver of the defenses or objections."  Crim.R. 12(H).  Rohn did not object to the alleged defect in the indictment before trial.  Also, R.C. 2941.29 states: "No indictment * * * shall be quashed, set aside, or dismissed, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, * * * unless the objection to such

6

indictment * * *, specifically stating the defect claimed, is made prior to the commencement of the trial, or at such time thereafter as the court permits."

{¶18} Thus, other than plain error review, Rohn has forfeited any argument concerning the validity of the indictment. *State v. Frazier*, 73 Ohio St.3d 323, 332 (1995). Although an appellate court may notice plain error under Crim.R. 52(B), such notice "is to be taken with the utmost caution; under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶19} Pursuant to Crim.R. 7(B), the indictment shall "contain a statement that the defendant has committed a public offense specified in the indictment." "The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." *Id.*

{¶20} Rohn was charged with Sexual Battery, in violation of R.C. 2907.03(A)(5): "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." The indictment specifically charged Rohn as "a person in loco parentis of the minor female victim."

{¶21} "To meet the definition of 'loco parentis,' a person must 'assume a dominant parental role and be relied upon by the child for support.'" *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, ¶90, quoting *State v. Noggle*, 67 Ohio St.3d 31 (1993), paragraph one of the syllabus. The Tenth Appellate District surveyed

7

several other appellate courts before concluding as follows with regard to an "in loco parentis" determination:

> Thus, according to the above authorities, the factors to consider when determining whether a person is acting in loco parentis include the following:
>
> > (1) the person is charged with a parent's rights and responsibilities;
> >
> > (2) the person has assumed the same duties as a guardian or custodian;
> >
> > (3) the person has assumed a dominant parental role;
> >
> > (4) the child relies upon the person for support;
> >
> > (5) the child "goes home" to the person;
> >
> > (6) the person's relationship with the child is close, supportive, and protective;
> >
> > (7) the person has the intention of acting as a parent, which is shown by the acts, conduct, and declaration of the person;
> >
> > (8) the person intentionally assumes the obligations incidental to the parental relationship; and
> >
> > (9) the person is the primary caretaker for the child while the biological parent is absent due to, for example, employment.

*State v. Abubakar*, 10th Dist. Franklin No. 11AP-440, 2011-Ohio-6299, ¶13.

{¶22} In the matter sub judice, Rohn did not request a bill of particulars. The parties engaged in discovery whereby Rohn received the evidence the state intended to present at trial. This evidence, including a list of witnesses and a copy of the two controlled calls, put Rohn on notice that the state intended to argue that he was a person assuming "a dominant parental role" or a person J.T. "relied upon" for support, which meets the definition for the "in loco parentis" element of Sexual Battery contained

8

in the indictment. J.T. specifically stated Rohn was like a father figure to her, and that she "trusted him more than her father" during the controlled calls. The testimony presented also demonstrated that several of the *Abubakar* factors were present in Rohn's relationship with J.T.

{¶23} Rohn relies on *State v. Noggle*, 67 Ohio St.3d 31 (1993), for his argument that the indictment was required to state the basic facts upon which his alleged status as a person in loco parentis was based. The holding in *Noggle* is inapposite to the present matter. *Noggle* dealt with a teacher-student relationship, and the legislature subsequently amended the statute to specifically cover sexual battery offenses where "the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person." R.C. 2907.03(A)(9).

{¶24} In light of the evidence and failure of Rohn to object prior to trial, we cannot conclude that Rohn was either misled or misunderstood the nature of the element of the "in loco parentis" allegation in the indictment. Further, the Sexual Battery counts merged for purposes of sentencing. Because of this, Rohn was not convicted of these counts. *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶135 ("A 'conviction' includes both the guilt determination and the penalty imposition."). Therefore, Rohn has not established an obvious error that affected his substantial rights with regard to the indictment.

{¶25} Rohn's first assignment of error is without merit.

9

{¶26} Rohn's second and third assignments of error are analytically intertwined, and therefore we examine them together. Rohn's second and third assignments of error state:

> [2.] THE DEFENDANT-APPELLANT WAS DEPRIVED OF HIS RIGHTS TO A FAIR AND IMPARTIAL TRIAL AND DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT ALLOWED THE STATE TO INTRODUCE EVIDENCE OF HIS ALLEGED "PRIOR BAD ACTS."
>
> [3.] DEFENDANT-APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 10, AND 16 OF THE OHIO CONSTITUTION WHEN INFLAMMATORY AND UNFAIRLY PREJUDICIAL EVIDENCE WAS PRESENTED TO THE JURY IN VIOLATION OF OHIO EVID. R. 403

{¶27} Rohn presents two issues under his second assignment of error. He challenges the introduction of evidence of various other acts of a sexual nature committed by Rohn against J.T., under Evid.R. 404(B) and Evid.R. 403, and he also challenges the trial court's failure to issue a limiting instruction to the jury with regard to this behavior. Under his third assignment of error, he challenges the introduction of evidence that he "groomed" or otherwise manipulated J.T., under Evid.R. 403.

**Admission of Prior Acts**

{¶28} The Supreme Court of Ohio has established the following three-step analysis regarding the admission of "other acts" evidence: (1) whether it is relevant under Evid.R. 401, (2) whether it is presented for a permissible purpose, such as those stated in Evid.R. 404(B), rather than to prove the character of the accused in order to show activity in conformity therewith, and (3) whether its probative value is substantially

outweighed by the danger of unfair prejudice under Evid.R. 403. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶20.

{¶29} The trial court's determination of whether certain evidence is relevant or whether the prejudice outweighs the probative value is reviewed under an abuse-of-discretion standard. *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶23. Whether the evidence is presented for a permissible purpose is, on the other hand, a legal conclusion that is reviewed de novo. *State v. Tackett*, 11th Dist. Ashtabula No. 2018-A-0052, 2019-Ohio-5188, ¶51, citing *Neff*, *supra*, at ¶23.

{¶30} "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Irrelevant evidence is inadmissible, while relevant evidence is generally admissible subject to certain exceptions. Evid.R. 402.

{¶31} Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As we have previously discussed regarding unfair prejudice:

> 'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under [Evid.R.] 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly

11

prejudicial evidence appeals to the jury's emotions rather than intellect.'

*Davis v. Killing*, 171 Ohio App.3d 400, 2007-Ohio-2303, ¶16 (11th Dist.), quoting *Hampton v. Saint Michael Hosp.*, 8th Dist. Cuyahoga No. 81009, 2003-Ohio-1828, ¶55. Because this standard is included as the third prong of the *Williams* analysis, a finding that the evidence is admissible under *Williams* necessarily precludes Rohn's argument that it is inadmissible under Evid.R. 403.

{¶32} Further, the Supreme Court of Ohio has held that "other acts" evidence must have a "temporal, modal and situational relationship" with the charged offenses so that it "discloses purposeful action in the commission of the offense in question." *State v. Burson*, 38 Ohio St.2d 157, 159 (1974). In other words, evidence of "other acts" is more likely to be relevant if it involves "the same crime, or a lesser included offense within the charged crime, or an offense for which the charged crime is itself a lesser included offense." *State v. Snowden*, 49 Ohio App.2d 7, 11 (1st Dist.1976). To the contrary, "an act too distant in time or too removed in method or type has no permissible probative value to the charged crime." *Id.* at 10.

{¶33} Under the first prong of the *Williams* analysis, Rohn's other acts, inter alia, looking at, touching, and showing J.T. inappropriate materials, were clearly relevant to the counts alleged in the indictment. These acts were a part of the ongoing sexual misconduct allegedly perpetrated by Rohn over several years. Under the second prong, these actions were corroborated by expert witness testimony as consistent with a plan or scheme whereby a sexual predator creates an environment where the victim is either desensitized or otherwise manipulated into not reporting the behavior. Daiber identified specific acts, such as inappropriate casual touching and exposing a child to

12

inappropriate sexual materials, as typical behavior for a scheme to normalize sexual assault and rape, rather than proof of Rohn's character. Under the third prong, we find that the probative value is not substantially outweighed by unfair prejudice. The acts Rohn challenges, as well as the testimony regarding Rohn's relationship with J.T. leading up to the sexual conduct, should not arouse the jury's emotional sympathies, evoke a sense of horror, or appeal to an instinct to punish, any more than the other evidence presented at trial. This is further evidenced by the jury finding Rohn not guilty of certain counts contained in the indictment. Given the circumstances and charges brought against Rohn, the other acts testimony and previous "grooming" testimony presented do not rise to the level of being unfairly prejudicial. Finally, the actions J.T. testified to with regard to Rohn had a temporal, modal, and situational relationship with the Rape, Sexual Battery, and Disseminating Matter Harmful to Juveniles offenses, which occurred over several years.

**Jury Instructions**

{¶34} First, we note that Rohn did not object to the jury instructions or propose a limiting instruction. Therefore, he has forfeited all but plain error review, the standard for which is previously stated in Rohn's first assignment of error.

{¶35} We recently held that the trial court's failure to issue a limiting instruction, which was not requested by the defendant, did not amount to plain error where "[n]othing suggest[ed] the jury used other acts evidence to convict [appellant] 'because he was a bad person.'" *State v. Stuart*, 11th Dist. Lake No. 2018-L-145, 2020-Ohio-3239, ¶62 (citations omitted). In the present matter, the same circumstances exist. The evidence presented to the jury outside of the other acts evidence was substantial, and

13

nothing in the record reflects that the other acts evidence unfairly prejudiced the jury as discussed above. Therefore, the trial court's failure to sua sponte issue a limiting instruction was not plain error.

{¶36} The second and third assignments of error are without merit.

{¶37} Rohn's fourth assignment of error states:

[4.] DEFENDANT-APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL [sic] DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOIATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION

{¶38} In order to prevail on an ineffective assistance of counsel claim on direct appeal, an appellant must demonstrate from the record that trial counsel's performance fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)). "'[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Id.* at 143, quoting *Strickland*, *supra*, at 697.

{¶39} There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142. Debatable trial tactics generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). In order to show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Bradley*, *supra*, at paragraph three of the syllabus.

{¶40} Furthermore, trial counsel's decision not to pursue every possible trial tactic for strategical reasons does not deprive a defendant of effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319 (1988) (citation omitted). "[A] defendant has no constitutional right to determine trial tactics and strategy of counsel. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant." *State v. Donkers*, 11th Dist. Portage Nos. 2003-P-0135 & 2003-P-0136, 2007-Ohio-1557, ¶183, citing *State v. Cowans*, 87 Ohio St.3d 68, 72 (1999) and *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶150.

{¶41} Rohn alleges his trial counsel was deficient due to three failures before and during trial: (1) the failure to successfully subpoena Department of Job and Family Services ("JFS") files relating to J.T. before trial; (2) the failure to object to the indictment; and (3) the failure to object to the testimony discussed above regarding other acts and Rohn's relationship with J.T. leading up to the sexual conduct. Rohn is unable to demonstrate that, as a result of any of these three alleged deficiencies, the result of the proceeding would have been different.

{¶42} As to the first alleged deficiency, the JFS files are not before this court; however, expert testimony refuted the suggestion that these files would possibly show that J.T. was never abused because of the mandatory reporting requirements of different individuals who came into contact with J.T. Daiber testified, with regard to abused children, that there may be various psychological and physical reasons why they would not report abuse. She explained how J.T.'s physical anatomy may not show signs of sexual abuse based on the age and hormone responses created by traumatic events such as rape, and why it is common for children to purposefully hide these signs

15

from adults. Because of this, it is plausible that a mandatory reporter would be unaware of her abuse and therefore not report it. Regardless, the JFS files are not a part of the record, and given the testimony regarding abuse, it is not apparent that the files would have resulted in a different outcome if presented to the jury.

{¶43} Regarding the second and third alleged deficiencies, they fail to demonstrate that a different outcome would have resulted to the extent discussed above. The record reflects that Rohn was neither mislead nor misunderstood the nature of the Sexual Battery charges against him. Further, the evidence presented regarding other acts and "grooming" behaviors was properly admitted by the trial court, and it did not amount to unfairly prejudicial evidence relied upon by the jury in concluding that Rohn was guilty of the seven counts of which he was convicted.

{¶44} Rohn's fourth assignment of error is without merit.

{¶45} Rohn's sixth assignment of error states:

[6.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT RETURNED A VERDICT OF GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶46} In determining whether the verdict was against the manifest weight of the evidence, "'[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in

which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin, supra*, at 175. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶47} There is a presumption that the findings of the trier of fact are correct, because the trier of fact has had the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984); *id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192, (1978) ("'* * * [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.").

{¶48} The jurors in the matter sub judice were presented with strong evidence from which they could reasonably conclude that Rohn committed the charged crimes. Audio recordings totaling approximately 90 minutes were presented of conversations between Rohn and J.T. During these controlled phone calls, Rohn repeatedly fails to refute the allegations of rape and sexual battery. While he claims at certain points that he does not remember much of the conduct, he specifically admits to raping J.T. in the basement of her Grant Street residence when she was a child. Further, both a family

17

witness and expert witness on childhood sexual assault provided testimony supporting J.T.'s direct testimony recounting the multiple instances of rape and sexual battery. The jury was entitled to receive and interpret this evidence, and to conclude that Rohn committed several of the crimes alleged in the indictment. This was not an instance where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed; to the contrary, the evidence firmly supported a finding that Rohn committed the crimes with which he was found guilty.

{¶49} Rohn's sixth assignment of error is without merit.

{¶50} Rohn's fifth assignment of error states:

> [5.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT DENIED HIS MOTION FOR ACQUITTAL MADE PURSUANT TO CRIM.R. 29(A).

{¶51} Pursuant to Crim.R. 29(A), "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A) requires the trial court to grant a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offense(s). "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶52} "A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial." *State v. Bernard*, 11th Dist. Ashtabula No. 2016-A-0063, 2018-Ohio-351, ¶56, citing *Thompkins, supra*, at 390

and *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25.  "'In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'"  *Id.*, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Where there is insufficient evidence, a conviction will be vacated.  *Id.* at ¶55, citing *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶32.

{¶53} A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence.  *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32.  Having determined that Rohn's convictions are not against the manifest weight of the evidence, it follows that they are supported by sufficient evidence.

{¶54} Rohn's fifth assignment of error is without merit.

{¶55} The judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.

19