[Cite as *State v. Volpi*, 2023-Ohio-4488.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2022-A-0067 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| THOMAS L. VOLPI, | |
| Defendant-Appellant. | Trial Court No. 2019 CR 00500 |

# O P I N I O N

Decided: December 11, 2023
Judgment: Affirmed in part, reversed in part, and remanded

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Mark R. Devan* and *William C. Livingston*, Berkman, Gordon, Murray & Devan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Thomas Volpi, appeals from the Ashtabula County Court of Common Pleas after his convictions for one count of Rape, a first-degree felony in violation of R.C. 2907.02(A)(2) and five counts of Sexual Battery, third-degree felonies in violation of R.C. 2907.03(A)(5). These charges related to two minor victims: A.W. (D.O.B. 11-1-2001) and D.L. (D.O.B. 9-5-2003). Appellant has raised seven assignments of error arguing that (1) the trial court erred in excluding testimony necessary to his defense and by prohibiting him from presenting extrinsic evidence at an in camera hearing about

A.W.'s prior rape allegation; (2) the trial court erred by permitting the State to introduce inadmissible evidence including the victims' video interviews and narrative statements; (3) cumulative error deprived him of his right to a fair trial and warrants reversal; (4) the trial court erred in its jury instruction defining the term "in loco parentis;" (5) his convictions for Sexual Battery under Counts 18-22 were not supported by sufficient evidence; (6) his convictions for Rape and Sexual Battery were against the manifest weight of the evidence; and (7) the trial court erred in imposing consecutive sentences and his indefinite sentence for Rape is unconstitutional.

{¶2} Having reviewed the record and the applicable caselaw, we find appellant's fifth assignment arguing that his convictions for Sexual Battery were not supported by sufficient evidence has merit. The State did not advance sufficient evidence to prove that appellant was acting in loco parentis for victim D.L. and therefore failed to establish the elements of Sexual Battery for Counts 18-22. However, because Counts 18-22 and Counts 24-28 merged for sentencing purposes, on remand appellant may still be sentenced on Counts 24-28, Unlawful Sexual Contact with a Minor.

{¶3} Appellant's remaining assignments of error are without merit or rendered moot by our opinion.

{¶4} Therefore, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

### Substantive and Procedural History

{¶5} On August 14, 2019, appellant was indicted on 39 counts: 12 counts of Rape, first-degree felonies in violation of R.C. 2907.02(A)(2); 11 counts of Sexual Battery,

2

third-degree felonies in violation of R.C. 2907.03(A)(2); five counts of Unlawful Sexual Conduct with a Minor, third-degree felonies in violation of R.C. 2907.04(A)(3); nine counts of Gross Sexual Imposition, fourth-degree felonies in violation of R.C. 2907.05(A)(1); and two counts of Furnishing Alcohol to Underage Persons, first-degree misdemeanors in violation of R.C. 4301.69(B) and 4301.99(C). Appellant pled not guilty to the charges.

{¶6} Appellant filed a motion in limine seeking to introduce evidence of a third-party witness's sexual activity and evidence of a prior false rape claim made by A.W. The court held an in camera hearing on the issues and overruled appellant's motion on June 18, 2020.

{¶7} On June 21, 2020, the matter proceeded to trial. On that date, the State voluntarily dismissed the two counts for Furnishing Alcohol to Underage Persons.

{¶8} The State called 12 witnesses and appellant called his daughters, Adrianna Volpi and Abigail Volpi. The following summarizes the testimony and evidence:

{¶9} On July 5, 2019, D.L. was 15 years old. She had a brother (Michael) and a sister (Samantha). A.W., who was 17, lived with them. A.W. was dating Michael, who was also 17. D.L.'s father was dating Teresa Swanson. Teresa is one of appellant's daughters.

{¶10} D.L., A.W., Michael, Samantha, and others went to a swim party at appellant's house. Also present at the party was Tiara Babbitt, one of appellant's former employees. Tiara pled guilty to a fourth-degree felony Obstructing Justice charge for her involvement in the case in exchange for her testimony. Tiara testified that she was under the influence of heroin and Xanax pills during the party.

{¶11} D.L. had been to Appellant's house before but had never gone swimming there. A.W. said she had never been to appellant's house before but knew appellant.

3

While there, appellant asked numerous times if D.L would be able to drive to his store to get alcohol. Her father and Teresa both said no on multiple occasions because she was only 15 and did not have her learner's permit. Appellant also asked people their ages at the party and both A.W. and D.L. told him their ages.

{¶12} Michael testified that appellant "was not our step grandfather, but we looked at – looked at him as our grandfather" because "my father was dating his daughter, and we were around them quite frequently for family activities."

{¶13} Teresa and D.L.'s father left around 9:30 p.m. and the minor children arranged to stay the night. At this time, appellant told the minors they could drink alcohol out of red Solo cups. D.L. said she drank eight or nine drinks that night and A.W. said she had six drinks.

{¶14} D.L. said she went into the house with appellant to get some towels. Appellant told D.L. she had a nice body and engaged in an act of sexual conduct with her. D.L. said she did not know what to do and did not stop him. Appellant also grabbed D.L.'s hand, causing her to engage in an act of sexual contact. Appellant then said he had been thinking about "doing this stuff to me for a while, since the first time he laid his eyes on me." D.L. did not say anything and was afraid appellant would become angry if she did.

{¶15} After this, D.L., Tiara, and appellant went to appellant's deli, Albino's, to pick up money to buy cigarettes and alcohol.

{¶16} D.L. said she and appellant went into his office and appellant pulled her shorts down, touched her erogenous zone, and performed oral sex on her. Appellant pulled his pants down and caused D.L. to engage in an act of oral sex. D.L. also said that appellant touched her breasts under her top and unsuccessfully attempted to engage in

4

sexual intercourse with her. D.L. said she told appellant to stop during this encounter, but he continued and said, "no one was going to find out, that it was going to be our secret."

{¶17} Appellant then went out to the car, brought Tiara into the store, and once inside, appellant, Tiara, and D.L. performed acts of sexual conduct with each other. D.L. said appellant was directing their actions and touching both of them. After this, appellant told D.L. he would start paying her if she continued to be good and made promises to buy things for her.

{¶18} The three went back to appellant's house, and D.L. told A.W. about what had happened but asked her not to tell anyone.

{¶19} Later in the night, appellant called Tiara and D.L. to his room and the three again engaged in sexual activities. Appellant attempted to engage in intercourse with D.L. but was unable to do so, saying he wished he did not drink as much as he did. During this time, A.W. came looking for D.L. and took her back out to the pool and told her she would not leave her for the rest of the night.

{¶20} During the party, appellant told his friend Tony that D.L. would be good in bed and appellant made a sexual remark about Tony to D.L. Appellant took D.L.'s hand and tried to cause her to commit an act of sexual contact with Tony. Tony rejected appellant's suggestions. D.L. said that Tony knew how old she was. Appellant objected to testimony about this interaction with Tony, but the trial court allowed it for the limited purpose of establishing that appellant knew D.L.'s age.

{¶21} At the end of the night, appellant directed where each of the guests would sleep. He told D.L. and A.W. to sleep in his room and said he would sleep on the couch. As D.L. and A.W. were getting ready for bed together, appellant came into the room and

5

said he would sleep in the bed with them with D.L. in the middle. Appellant started touching D.L. in the bed and she began crying. A.W. volunteered to move to the middle. Appellant touched A.W.'s vagina, removed her underwear, and performed oral sex on her. D.L. said she saw appellant remove A.W.'s tampon, however, A.W. denied this. A.W. testified that she told appellant to stop three or four times.

{¶22} D.L. used A.W.'s phone to text Michael regarding his commission of a sexual act with A.W. Michael came into the room, said he saw appellant touching A.W, and told appellant "You know she's 17, right?" and then walked out. A.W. testified that appellant continued to perform oral sex after Michael left. However, D.L. said that appellant stopped and the two girls left the room.

{¶23} After leaving the room, D.L. and A.W. contacted Teresa and said appellant had engaged in sexual activity with them. While waiting for Teresa to arrive, appellant again promised to give D.L. money and said he could go to jail if they said anything. Michael said he found A.W.'s underwear on the floor in appellant's bedroom and took them with him to give to the police.

{¶24} Teresa came to the house and began screaming at appellant. Teresa took D.L. and A.W. to the Ashtabula Police Department. While on station, Michael gave officers A.W.'s underwear taken from appellant's bedroom.

{¶25} A.W. and D.L provided statements to the investigators and went to the hospital. Sexual Assault Nurse Examiner (SANE) certified nurses performed examinations on both girls and took specimens for further testing. D.L. reported that appellant had choked her, and her treatment records noted a contusion on her throat. As part of the examination and medical treatment, the SANE nurses took statements about

6

the events that transpired at the party. The nurses both explained these statements are medically necessary because they ensure they can provide appropriate care and take necessary samples.

{¶26} The SANE nurses read their reports into the record. These reports included written narrative statements from the girls. These statements had been recorded verbatim for the SANE reports and read into the record as part of the SANE nurses' testimony. Appellant objected to reading the narratives on hearsay grounds, but the trial court overruled the objections because the girls gave their statements in the context of receiving medical treatment. In addition, appellant objected to D.L.'s statement specifically because D.L. related that appellant told her she did not need her "n*****" boyfriend and that she did not "need those black people. All you will be doing is living in Section 8 housing. Let me take care of you. I can buy you a big house." The SANE nurse who took D.L.'s statement said that she had to take breaks because D.L. was "very upset and crying[.]"

{¶27} The next day, investigators searched appellant's house pursuant to search warrant. While investigators were on-scene, appellant offered that his daughters throw wild parties and he was asleep during the party. He said when he woke up, one of the girls accused him of raping her and he told them to get out of his house.

{¶28} Tiara talked to the police the day after the party and denied having any involvement. After this, she talked to appellant at his store. She said appellant pulled her shirt up to make sure she was not wearing a wire and told her not to talk to the police. Tiara eventually told investigators about her involvement.

7

{¶29} Matthew Wunsuch, of the Ashtabula County Children Services Board ("ACCSB"), testified that he sat in on forensic interviews of both girls while another ACCSB worker conducted the interviews. Wunsch said the purpose of a forensic interview is to "discover information for the purpose of medical diagnosis and treatment, for the purpose of child protection, for any purpose of law enforcement[.]" After conducting the interviews, Wunsuch recommended counseling services to both A.W. and D.L.

{¶30} The State presented video recordings of the girls giving these interviews. Appellant objected to their use for the jury on hearsay grounds and because they were cumulative of A.W. and D.L.'s testimony. During a sidebar, the trial court said "So, the testimony that's in these videos is already in?" Appellant's trial counsel said "Correct." The State argued the statements were not duplicative and were given for the purpose of medical treatment. Relying on *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, and because the victims in this case did testify and were subject to cross-examination, the court allowed the video statements to be played for the jury.

{¶31} Lab results from the Bureau of Criminal Investigation (BCI) indicated that the rape kits for A.W. and D.L. contained DNA consistent with appellant. In addition, D.L. and A.W.'s underwear contained DNA consistent with appellant.

{¶32} The State rested and appellant's daughters, Adrianna Volpi and Abigail Volpi, testified in his case in chief.

{¶33} Adrianna and Abigail said they stopped by the party for about five minutes. They saw A.W. and D.L. talking on the porch laughing and giggling. They said appellant was intoxicated. Appellant attempted to elicit testimony from Adrianna and Abigail that Michael was skinny dipping with Tiara while A.W. talked to appellant. Appellant intended

8

to use this evidence to demonstrate that A.W. had a motive of jealousy to engage in sexual acts with appellant. The trial court sustained the State's objection to the testimony.

{¶34} Among the jury instructions the trial court gave was a definition of "in loco parentis" as an element of sexual battery in Counts 18-22. The court said:

> "In loco parentis" means standing in the place of a parent and assuming the parental duties or responsibilities. The factors you may consider when determining whether a person is acting in loco parentis include the following: the person in charged with a parent's rights and responsibilities; the person has assumed the same duties as a guardian or custodian; the person has assumed a dominant parental role; the child relies upon the person for support the child "goes home" to the person; the person's relationship with the child is close, supportive, and protective; the person has the intention of acting as a parent, which is shown by the acts, conduct and declaration of the person; the person intentionally assumes the obligations incidental to the parent relationship; and the person is the primary caretaker for the child while the biological parent is absent due to, for example, employment.

{¶35} Appellant objected to this instruction because it was too expansive and could confuse the jury, particularly because it was unclear how many of the factors to be considered needed to be present to find a person acted in loco parentis.

{¶36} The jury found appellant guilty on Count 12, Rape, for conduct relating to A.W., and guilty on Counts 18-22, Sexual Battery and Counts 24-28, Unlawful Sexual Conduct with a Minor, for conduct relating to D.L. The jury returned not guilty verdicts on the remaining counts.

{¶37} On August 29, 2022, the trial court sentenced appellant. The parties agreed that Counts 18-22 and Counts 24-28 merged for sentencing purposes. The State elected to proceed to sentence on Counts 18-22, Sexual Battery. The court sentenced appellant to the maximum sentence on each of the six counts – an indeterminate sentence of 11 to 16 and one-half years on the Rape count and five years each on each of the five Sexual

9

Battery counts. The court ordered that the sentences be consecutive for a total sentence of 36 to 41 and one-half years.

**{¶38}** Appellant timely appealed raising seven assignments of error.

### Assignments of Error and Analysis

**{¶39}** Appellant's first assignment of error states:

**{¶40}** "[1.] The trial court committed reversible error in excluding material testimony, evidence and argument offered by the defense, in violation of Appellant's constitutional rights secured under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. (Tr. Vol. 6 at 529-32; Tr. Vol. 3 at 102-107; Tr. Vol. 3 at 126-27; Tr. Vol. 4 at 322-23; Tr. Vol. 6 at 625-26; T.D. 98; Tr. Hrg' 6-15-22 at 18; Tr. Vol. 2 at 257-58)."

**{¶41}** Appellant raises three distinct issues under this assignment of error. First, he argues the trial court erred by excluding evidence of A.W.'s state of mind that would demonstrate she willingly engaged in sexual activity with appellant. Second, that the trial court erred by not allowing appellant to cross-examine A.W. or submit extrinsic evidence at a pre-trial in camera hearing held pursuant to *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992). Third, that the trial court erred by not allowing appellant to comment on the State's failure to call D.L.'s father as a witness.

### Standard of Review

**{¶42}** In general, the determination to admit or exclude evidence lies within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Miller*, 11th Dist. Trumbull No. 2014-T-0061, 2015-Ohio-956, ¶ 14. "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither

10

comports with reason, nor the record.' *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.,* quoting *State v. Beechler,* 2d Dist. Clark No. 09-CA-54, 2010-Ohio1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67.

{¶43} Whether evidence constitutes inadmissible hearsay is a question of law subject to de novo review. *Morford v. Morford*, 2018-Ohio-3439, 118 N.E.3d 937, ¶ 12 (11th Dist.). "Determining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard of review." *State v. Hartman,* 161 Ohio St. 3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. This is because Evid.R. 802 specifically provides that "hearsay is not admissible." Therefore, "the trial court's decision to admit hearsay is not governed by the test of abuse of discretion, which the Supreme Court applies to instances where the trial court's evidentiary rulings relate to matters expressly or implicitly within its discretion, as in rulings on relevancy (Evid.R. 402 and 403) or expert testimony (Evid.R. 702)." *State v. Sorrels*, 71 Ohio App.3d 162, 165, 593 N.E.2d 313 (1st

11

Dist.1991). We review the trial court's decision relating to hearsay "in light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right." *Id.*

{¶44} Hearsay is defined as a "statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

### A.W.'s State of Mind

{¶45} First, we address A.W.'s state of mind and her willingness to engage in sexual activity with appellant. Appellant acknowledges that he was able to present some evidence supporting his theory of the case, such as Michael and Tiara spending time alone together and exchanging contact information, and that Tiara was skinny dipping. However, he argues that it was error for the trial court to prohibit questioning Michael and Tiara about whether they had any sexual interactions and whether A.W. was aware of them. He also argues that the trial court erred by prohibiting him from questioning Abigail and Adrianna about A.W. overhearing appellant say Michael and Tiara were skinny dipping together.

{¶46} The trial court ruled that it would not allow questions about Michael having a sexual encounter with Tiara because the issue was not relevant. The court said Michael "was not present when any of the allegations of misconduct occurred between your client, Mr. Volpi, and [D.L] or [A.W.], so I don't understand how questioning him about his time with Tiara has any relevance to the case that we're trying[.]" Appellant argued that A.W. slept in appellant's bed and engaged in sexual activity with him as a "form of retaliation

12

as to Michael spending time with Tiara." The court said it would not allow allegations of sexual activity between a non-victim and someone other than the defendant to be admitted during trial.

{¶47} Similarly, the trial court did not allow appellant to ask Adrianna and Abigail about Tiara and Michael skinny dipping. Specifically, appellant wanted them to testify as to what appellant said about Tiara and Michael while A.W. and D.L. were giggling on the porch. He argued that the statement was not offered for the truth of the matter asserted, but for the impact it had on A.W.

{¶48} The State objected to the statement on two grounds, first that the information was not relevant. Second, that the testimony was offered for the truth of the matter asserted and therefore was hearsay. The trial court sustained the objection.

{¶49} Evid.R. 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶50} The trial court excluded the topic of Michael and Tiara's interactions primarily on relevance grounds. Although Adrianna and Abigail's testimony involved a question of hearsay, the underlying content of their testimony aimed to address A.W.'s reaction to Michael and Tiara spending time together, a topic which the trial court repeatedly excluded due to relevance.

{¶51} The trial court said that it did not believe evidence about Michael and Tiara's activity together was relevant evidence. Without passing specifically on whether Abigail and Adrianna's testimony was hearsay, we conclude that the trial court did not abuse its

13

discretion in excluding testimony about Michael and Tiara as irrelevant to appellant's conduct with A.W.

{¶52} Appellant arranged where everyone would sleep. Appellant came into the room he assigned to A.W. and D.L. unannounced. Appellant was touching D.L. in the bed and A.W. said that when she moved to the middle to get D.L. away from appellant he began touching her and performing oral sex on her. A.W. testified that she told appellant to stop performing oral sex on her and he continued.

{¶53} Tiara and Michael's possible sexual interactions is not evidence with any tendency to make the existence of these facts more or less probable. Therefore, the trial court did not err in excluding this evidence.

### Extrinsic Evidence

{¶54} Before trial, appellant moved in limine to admit evidence of A.W.'s prior rape accusation at trial. The trial court held a hearing on appellant's motion, part of which was held in camera with A.W. present pursuant to *Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992). Appellant was prepared to present extrinsic evidence at the hearing that A.W.'s allegation against her stepfather was false. However, the Court did not receive any of that evidence, though it was proffered in some detail. Appellant's arguments in favor of allowing extrinsic evidence to be presented at this hearing to prove A.W.'s prior allegation was false misconstrues the relevant case law. Appellant incorrectly suggests that he may hold a mini-trial on the victim's prior rape allegations regardless of her denial that the prior allegation was false.

{¶55} In camera, the trial court asked A.W. if she had ever made a claim that her stepfather engaged in sexual activity with her. She answered yes. The trial court then

14

asked whether it was true, and A.W. again answered yes. Finally, the court asked her whether any sexual activity occurred between her and her stepfather, and A.W. answered yes. On the basis of these answers, the trial court concluded the hearing and disallowed extrinsic evidence during the hearing to establish the falsity of A.W.'s claim. The court further disallowed any reference to her prior allegation at trial.

{¶56} Evidence of "sexual activity" is prohibited under the rape shield protection in R.C. 2907.02(D). *State v. Jeffries*, 160 Ohio St.3d 300, 2020-Ohio-1539, 156 N.E.3d 859, ¶ 14. "Sexual activity means sexual conduct or sexual contact, or both." R.C. 2907.01(C).

{¶57} "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶58} "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶59} Evid.R. 608(B) allows cross-examination on specific instances of conduct if they are "clearly probative of truthfulness or untruthfulness."

{¶60} *Boggs* balanced the objective of the rape shield provisions and the legitimate defense strategy to test the credibility of a victim as set forth in Evid.R. 608(B).

15

*Boggs, supra,* at 420-421. "Evid.R. 608(B) provides a well-established rule of law that protects a legitimate state interest in preventing criminal trials from bogging down in matters collateral to the crime with which the defendant was charged." *Id.* at 422-423. To allow otherwise in the context of a victim of sexual assault "would immeasurably set back the recent trend towards ensuring that the person on trial is the defendant and not the alleged victim." *Id.* at 422.

{¶61} "In certain instances it is within the discretion of the trial court to permit cross-examination of a rape victim as to prior false accusations of rape." *Id.,* at paragraph one of the syllabus.

> Where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an *in camera* hearing to ascertain whether sexual activity was involved and, as a result, cross-examination on the accusation would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into pursuant to Evid.R. 608(B). [1]

*Id.* at paragraph two of the syllabus.

{¶62} Ohio courts have applied *Boggs* to balance the competing interests of alleged victims who R.C. 2907.02(D) protects and defendants' rights to cross-examine witnesses and offer evidence. How they have done it is not entirely uniform.

{¶63} We have held that, assuming a good faith basis for the question, a defendant may ask a victim if he or she has made a prior false accusation of sexual activity. *State v. Singleton,* 11th Dist. Lake No. 2002-L-077, 2004-Ohio-1517, ¶ 65. If the

---

1. We refer throughout to a "prior false rape accusation" only as shorthand. R.C. 2907.02(D) addresses cross-examination on a far wider ranges of conduct. *See State v. Jeffries,* 1st Dist. No. C-170182, 2018-Ohio-2160, 112 N.E.3d 417, ¶ 39.

16

alleged victim admits to making a prior false rape accusation, the court must conduct an in camera hearing to determine if the prior instance involved sexual activity. *Id.*

{¶64} Appellant relies on the Fourth District's decision on remand from the Supreme Court in *Boggs, supra*. In *Boggs II*, the Fourth District said there is a "two-stage procedure to be employed by the court in handling allegations of prior false rape accusations." *State v. Boggs*, 89 Ohio App.3d 206, 210, 624 N.E.2d 204 (4th Dist.1993). The first stage is where counsel for the defendant inquires as to the allegations of prior false rape accusations. *Id.* If the alleged victim "responds in the negative, the 'trial court would have the discretion to determine whether and to what extent the defense can proceed with cross-examination.'" *Id.*, quoting *Boggs I*, 63 Ohio St.3d at 421. "However, if the alleged victim admits on cross-examination that she made prior false rape accusations, then an in camera hearing is to be held at which time the court is to determine whether sexual activity was involved." *Id.* During the in camera hearing, the parties may present extrinsic evidence. *Id.* "Indeed, it is difficult to imagine how a trial court could even make a fair and well-reasoned factual determination of whether the accusations involved 'sexual activity' without considering extrinsic evidence." *Id.*

{¶65} In *State v. Hall,* 2nd Dist. Montgomery No. 25794, 2014-Ohio-2094, the court took a slightly different tack. The defendant had claimed to have reason to believe the victim had made prior false accusations of sexual abuse, and that evidence of such would be admissible under Evid.R. 608(B). *Id.* at ¶ 11. The defendant attempted to question the victim about these prior accusations on cross-examination, but the trial court prohibited him from doing so. *Id.* The defendant proffered evidence that he had two witnesses who would testify the victim had made false accusations. *Id.* at ¶ 13. However,

17

the trial court did not allow the victim to answer whether she had made a prior false accusation. *Id.*

**{¶66}** The Second District remanded the matter to determine whether the defendant's evidence of the prior false accusation had been properly excluded under the rape shield provision because it involved sexual activity. *Id.* at ¶ 14. The Second District ordered the lower court to conduct an in camera hearing about the prior accusations, saying that the lower court must allow the victim to answer the question of whether she had made prior false sexual abuse allegations. *Id.* at ¶ 16. If the answer to that question is "'no,' the hearing is over." *Id.* The defendant is "bound" by the answer "and extrinsic contrary evidence is inadmissible." *Id.,* citing *State v. Netherland*, 132 Ohio App.3d 252, 263, 724 N.E.2d 1182 (1st Dist.1999). However, if the answer is "yes," extrinsic evidence is permitted to prove that the prior accusations were entirely false. *Id.,* citing *State v. Boggs*, 89 Ohio App.3d 206, 624 N.E.2d 204 (4th Dist.1993).

**{¶67}** In *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-2897, the Seventh District said the "process for allowing cross-examination regarding false accusations of sexual offenses is as follows: First, the defense must ask if the victim has made any prior false accusations of rape." *Id.* at ¶ 92, citing *Boggs I* at 421. Where the victim "answers 'no,' the defense may not introduce extrinsic evidence, and the court has the discretion to allow or disallow further questioning on the topic." *Id.* However, where the victim "answers 'yes,' the court must hold an in camera hearing to determine if the prior accusation involved any sexual activity*." Id*.

**{¶68}** It is critical to observe that a victim's admission to making a prior false rape accusation does not necessarily mean the victim's claim of sexual activity is also false.

18

That is why *Boggs* and its progeny direct courts to determine whether a prior false rape accusation involved sexual activity. Indeed, R.C. 2907.02(D) prohibits evidence of not just rape but all "sexual conduct or sexual contact, or both." If, and only if, the victim admits to making a prior false rape accusation, then the trial court is to hold an in camera hearing and may hear extrinsic evidence to determine if there was any sexual activity involved. At that stage, the defendant may submit extrinsic evidence and the trial court must determine whether sexual activity was involved or if the claim was totally unfounded. An accusation of rape is totally unfounded if it does not involve any sexual activity at all. Such an unfounded claim would permit the trial court, in its discretion under Evid.R. 608(B), to admit specific instances of conduct. If sexual activity is involved, or if the victim does not admit to making a prior false rape accusation, cross-examination on the accusation would be prohibited by R.C. 2907.02(D).

**{¶69}** The above cases all hold that if a witness admits having made a false rape accusation in the past, the trial court must hold an in camera hearing to determine whether it was rooted in sexual conduct or contact. They all hold that upon a determination that it was, R.C. 2907.02(D) prohibits further cross-examination about the prior accusation. They all hold that upon a determination it was not, i.e., if the accusation was "totally unfounded," application of Evid.R. 608(B) determines whether inquiry may be made into it and what evidence of the prior accusation, if any, is admitted.

**{¶70}** However, the above authorities all take slightly different approaches. Some have allowed the question of whether a past false accusation had been made to be posed and answered in open court. *See Singleton*, 11th Dist. Lake No. 2002-L-077, 2004-Ohio-

19

1517. Others require that the question be posed and answered in camera. *See Hall*, 2nd Dist. Montgomery No. 25794, 2014-Ohio-2094.

**{¶71}** Here, A.W. never admitted to having made a false accusation. In fact, she told the court the accusation was true. The reported cases provided consistent guidance for trial courts under these circumstances. *See Hall, Boggs I,* 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), *Boggs II,* 89 Ohio App.3d 206, 210, 624 N.E.2d 204 (4th Dist.1993), and *Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-2897.

**{¶72}** In *Boggs I*, the Ohio Supreme Court said if the alleged accuser denies having made a false accusation, "the trial court would have the discretion to determine whether and to what extent the defense can proceed with cross-examination." *Boggs I, supra* at ¶ 421. In *Boggs II*, the Fourth District repeated that holding verbatim. *Boggs II, supra*, at 210.

**{¶73}** In *Wolff*, where the victim denies making a false accusation "the defense may not introduce extrinsic evidence, and the court has the discretion to allow or disallow further questioning on the topic." *Wolff* at ¶ 92.

**{¶74}** In *Hall,* the Second District ordered the trial court to conduct an in camera hearing at which the witness was to be allowed to answer the question of whether she had made prior false sexual abuse allegations. The court held if the answer to that question is "'no,' the hearing is over."

**{¶75}** The *Hall* decision may be at odds with *Boggs I* and *II* on this issue. While the court said that the defendant is "bound" by a denial of falsely accusing, "and extrinsic contrary evidence is inadmissible" it is unclear whether this meant inadmissible in the

20

hearing or at trial. If it meant at trial, we regard this holding as inconsistent with *Boggs* which, on this point is our lodestar.

{¶76} Be that as it may, in this case, the trial court properly conducted a hearing on appellant's motion in limine and held an in camera hearing to determine whether evidence of A.W.'s prior accusation was admissible. The trial court asked A.W. if she had made a claim that her stepfather engaged in sexual activity with her and then asked whether that statement was true. A.W. answered both questions in the affirmative. A.W. did not admit to making a false allegation, therefore, there was no need to introduce extrinsic evidence to determine whether the claim was totally unfounded or if it did still involve any sexual activity at all.

{¶77} Appellant is bound by A.W.'s answers and the trial court did not err by prohibiting him from presenting extrinsic contrary evidence.

### Comment on State's Failure to Call a Witness

{¶78} Third, the trial court sustained the State's objection to appellant's comment on the State's failure to call D.L.'s father as a witness. However, appellant argues that this failure prejudiced him in reference to Counts 24-28, for Unlawful Sexual Conduct with a Minor. As discussed in greater detail below, although the jury found appellant guilty on these counts, they merged with Counts 18-22 and the State elected to proceed to sentencing on Counts 18-22. Therefore, there is no final entry of conviction as to Counts 24-28 and we decline to pass on error assigned specifically addressing these counts at this time. *See State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶ 26.

{¶79} Accordingly, appellant's first assignment of error is without merit.

Case No. 2022-A-0067

**{¶80}** Appellant's second assignment of error states:

**{¶81}** "[2.] The trial court committed reversible error in permitting the state to introduce inadmissible hearsay statements and irrelevant and prejudicial evidence, over his objection, in violation of Appellant's constitutional rights secured under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. (Tr. Vol. 5 at 367-68; Tr. Vol. 4 at 334-35; Tr. Vol. 5 at 369-375; Tr. Vol. 5 at 482-84, 486-87; Tr. Vol. 5 at 435-445; Tr. Vol. 2 at 119-124)."

**{¶82}** Appellant next argues that the trial court erred by admitting inadmissible evidence. First, he argues it was error for the court to admit Ashtabula County Children Services Board video recordings of A.W. and D.L.'s forensic interviews. Second, he argues that the trial court erred by allowing the SANE nurses to read their narrative statements into evidence when those statements contained extremely prejudicial and inflammatory material. Finally, he argues the court erred by admitting other acts evidence that appellant tried to have D.L. and his friend Tony engage in sexual acts.

**{¶83}** As addressed above, whether evidence constitutes inadmissible hearsay is a question of law subject to de novo review. *Morford*, 2018-Ohio-3439, 118 N.E.3d 937, ¶ 12.

**{¶84}** In *State v. Arnold,* 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775 the Ohio Supreme Court addressed forensic interviews conducted with sexual-abuse victims at child advocacy centers. The court concluded statements made to interviewers at child advocacy centers that serve a primarily forensic or investigative purpose are testimonial in nature and therefore inadmissible pursuant to the Confrontation Clause of the Sixth Amendment when the declarant is unavailable for cross-examination. *Id.* at

22

paragraph one of the syllabus. However, statements made for medical diagnosis and treatment are non-testimonial and are therefore "admissible without offending the Confrontation Clause." *Id.* at paragraph two of the syllabus.

{¶85} The court developed a "primary purpose" test to determine whether the interview's primary purpose was to further the State's investigation into criminal activity or whether it was to meet an ongoing emergency. *Id.* at ¶ 35-36. In *Arnold,* the lower court determined that the minor victim was unable to testify. *Id.* at ¶ 9. The lower court admitted the forensic recording of the victim's statements and held they were admissible hearsay under Evid.R. 803(4) because they had been made for the purpose of medical diagnosis. *Id.* The court also determined the statements were not barred by the Confrontation Clause. *Id.*

{¶86} The interview in that case contained statements such as descriptions of the defendant's genitals and the fact that the defendant had shut and locked a bedroom door before raping her. *Id.* at ¶ 34. The Supreme Court determined these statements were testimonial in nature and their admission without prior ability for cross-examination violated the Confrontation Clause. *Id.* However, other statements elicited during the forensic examination, like the sexual acts the defendant performed, were non-testimonial and were admissible because they were necessary for medical diagnosis and treatment. *Id.* at ¶ 37-38, 41.

{¶87} Addressing the issue of hearsay, Wunsch, the ACCSB worker, testified that the purpose of the forensic interview was to obtain information used for medical diagnosis and treatment. He said he recommended counseling services to A.W. and D.L. and that further direct action by ACCSB was not necessary as both girls were in stable homes.

23

Thus, the statements in the forensic interviews were admissible hearsay under Evid.R. 803(4) because they had been made for the purpose of medical diagnosis.

**{¶88}** Addressing the Confrontation issue, as in *Arnold,* D.L. and A.W.'s forensic interviews have elements that are testimonial in nature and elements that are non-testimonial. However, unlike *Arnold*, appellant had the full ability to cross-examine both victims. The issue in *Arnold* was not whether the statements were inadmissible hearsay, but rather whether their admission violated the Confrontation Clause. Because appellant had the opportunity to confront the witnesses, the trial court's decision to allow the full video recordings did not violate his right to confrontation.

**{¶89}** Next, we address appellant's argument that the trial court erred by allowing the SANE nurses to read A.W. and D.L.'s diagnostic statements into the record. The SANE nurses took A.W. and D.L.'s statements for the purpose of providing medical and diagnostic assistance to the girls. The statements were medically necessary because they ensure they can provide appropriate care and take necessary samples.

**{¶90}** Evid.R. 803(4) provides that statements made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule.

**{¶91}** Appellant does not argue that at least portions of the girls' statements were admissible under this rule. However, he contends that the trial court erred by allowing the SANE nurses to read the entire narrative, particularly portions which, he argued, contained prejudicial and irrelevant statements about appellant calling D.L.'s boyfriend a "n*****" and stating that appellant paid Tiara as a prostitute. Appellant also argues that it was improper to read the portion of the narrative where A.W. said she had been raped before.

24

{¶92} However, these statements were gleaned as part of the SANE nurse's overall medical evaluation and still fall within the ambit of Evid.R. 803(4) and were admissible statements made for purposes of medical diagnosis or treatment. This is particularly the case in regard to A.W. saying she had been raped before, as such a claim may have medical relevance.

{¶93} Furthermore, the SANE nurse who took D.L.'s statement said that she had to take breaks because D.L. was "very upset and crying[.]" The statements were taken the following morning within hours of the events. Therefore, D.L.'s statements would also be admissible under Evid.R. 803(2), allowing exited utterances "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See State v. Chappell*, 97 Ohio App.3d 515, 522, 646 N.E.2d 1191 (8th Dist.1994) (Victim's statements to grandmother 32 hours after alleged rape were admissible under excited utterance exception to hearsay rule.)

{¶94} Finally, appellant's argument about other acts evidence is not well taken. Other acts evidence is admissible pursuant to the following three step analysis: the first question is whether the "evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *State v. Williams*, 134 Ohio St.3d 521, 983 N.E.2d 1278, 2012–Ohio–5695 ¶ 20, citing Evid.R. 401. Second, the court must "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether [it] is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Finally, the court must "consider whether the

25

probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.,* citing Evid.R. 403.

**{¶95}** D.L. testified that appellant told his friend Tony that D.L. would be good in bed. This is an admission by a party opponent. *See* Evid.R. 801(D)(2). This is not other acts evidence at all.  Next, the trial court did not err in allowing D.L. to testify that appellant told her Tony had a big penis and then tried to grab D.L.'s hand to put it on his penis. D.L. had testified that appellant asked about her age earlier in the night. She also said Tony knew how old she was. Appellant's statement and conduct were admissible under Evid.R. 404(B)(2) to prove appellant's knowledge of D.L.'s age and his absence of mistake in engaging in sexual conduct with her. Finally, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

**{¶96}** Accordingly, appellant's second assignment of error is without merit.

**{¶97}** Appellant's third assignment of error states:

**{¶98}** "[3.] The trial court's errors individually and cumulatively denied Appellant his constitutional right to a fair trial secured under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. (Tr. Vol. 6 at 529-32; Tr. Vol. 3 at 102-107; Tr. Vol. 3 at 126-27; Tr. Vol. 4 at 322-23; Tr. Vol. 6 at 625-26; T.D. 98; Tr. Hrg' 6-15-22 at 18; Tr. Vol. 2 at 257-58; Tr. Vol. 5 at 367-68; Tr. Vol. 4 at 334-35; Tr. Vol. 5 at 369-375; Tr. Vol. 5 at 483-84, 486-87; Tr. Vol. 5 at 435-445; Tr. Vol. 2 at 119-124)."

**{¶99}** "A conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio

26

St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223. Appellant's third assignment of error arguing for reversal due to cumulative error relates specifically to cumulative error arising from his first and second assignments of error. Having found no error in appellant's prior assignments of error, we cannot conclude that cumulative error deprived appellant of his right to a fair trial.

{¶100} Accordingly, appellant's third assignment of error is without merit.

{¶101} Appellant's fourth assignment of error states:

{¶102} "[4.] The trial court committed reversible error in instructing the jury on the definition of 'loco parentis' as used in R.C. 2905.03(A)(5). (Tr. Vol. 6 at 654-55, 684)."

{¶103} R.C. 2905.03(A)(5), Sexual Battery, prohibits sexual conduct with another, not the offender's spouse, if the offender is the person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis. The State advanced its case on the theory that appellant was acting in loco parentis when he engaged in sexual conduct with D.L.

{¶104} Appellant and the State both submitted proposed jury instructions for the definition of in loco parentis. The trial court rejected appellant's instruction and instead gave an instruction which listed nine factors to consider in determining whether someone had acted in loco parentis. Appellant believes that the nine-factor definition was not a workable jury instruction and that it was confusing and provided an inaccurate statement of law.

{¶105} The decision to issue a particular jury instruction rests within the sound discretion of the trial court. *State v. Emerine*, 11th Dist. Trumbull No. 2016-T-0048, 2017-Ohio-1206, ¶ 22. We review the trial court's administration of a jury instruction for an

27

abuse of discretion. *State v. Tvaroch*, 11th Dist. No. 2012-T-0008, 2012-Ohio-5836, 982 N.E.2d 751, ¶ 20. "A jury instruction must fairly and correctly state law applicable to the evidence presented at trial" *Id.*, citing *Wozniak v. Wozniak,* 90 Ohio App.3d 400, 410, 629 N.E.2d 500 (9th Dist.1993). The court's instructions should address the issue of the case as presented by the evidence and pleadings. *Id.*

{¶106} The instructions should be taken in their entirety and "reversible error will not be found merely on the possibility that the jury may have been misled. *Id.* at ¶ 21, citing *Wozniak* at 410. An appellate court "must determine whether the jury charge in its entirety resulted in prejudice." *Id.*, citing *State v. Jackson,* 92 Ohio St.3d 436, 446, 751 N.E.2d 946 (2001). Where the instruction incorrectly states the law, a reviewing court will conduct a de novo review to determine whether the incorrect instruction "probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Id.* at ¶ 22, citing *State v. Kovacic,* 11th Dist. Lake No. 2010–L–018, 2010-Ohio-5663, ¶ 17.

{¶107} The trial court need not give a proposed jury instruction verbatim and may use its own language to communicate the same legal principles in the language the court deems proper. *State v. Sneed,* 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992). Further, the instructions found in the Ohio Jury Instructions are not mandatory and the instructions to be given at trial should be "fact specific and based upon the indictment, testimony, evidence, and defenses available to the defendant." *State v. Jordan,* 11th Dist. Lake No. 2009–L–006, 2009-Ohio-6152, ¶ 40.

{¶108} The instruction the trial court gave contained nine factors and read as follows:

> "In loco parentis" means standing in the place of a parent and assuming the
> parental duties or responsibilities. The factors you may consider when

28

Case No. 2022-A-0067

determining whether a person is acting in loco parentis include the following: the person in charged with a parent's rights and responsibilities; the person has assumed the same duties as a guardian or custodian; the person has assumed a dominant parental role; the child relies upon the person for support the child "goes home" to the person; the person's relationship with the child is close, supportive, and protective; the person has the intention of acting as a parent, which is shown by the acts, conduct and declaration of the person; the person intentionally assumes the obligations incidental to the parent relationship; and the person is the primary caretaker for the child while the biological parent is absent due to, for example, employment.

{¶109} The instruction the court gave contained the entire OJI definition of in loco parentis: "in loco parentis means standing in the place of a parent and assuming parental duties or responsibilities." Ohio Jury Instructions, CR 507.03 (Rev.3/5/16). The trial court's instruction then listed the nine factors for the jury to consider. Those factors were derived from *State v. Noggle*, 67 Ohio St.3d 31, 33, 615 N.E.2d 1040 (1993) and *State v. Abubakar*, 10th Dist. Franklin No. 11AP-440, 2011-Ohio-6299, ¶ 13; *State v. Rohn*, 11th Dist. Lake No. 2020-L-006, 2020-Ohio-6918, ¶ 13. Those factors were all correct statements of the law.

{¶110} The instruction, taken in its entirety, fairly and correctly stated the applicable law based on the evidence presented at trial. Appellant's argument that he was prejudiced by the instruction because it was confusing or unworkable is not well taken. We will not disturb the trial court's sound discretion.

{¶111} Accordingly, appellant's fourth assignment of error is without merit.

{¶112} Appellant's fifth assignment of error states:

{¶113} "[5.] The trial court erred in overruling Appellant's motion for judgment of acquittal on Counts 18-22 because there was insufficient evidence to prove beyond a reasonable doubt that Appellant stood in loco parentis of Complainant 1, in violation of

29

his constitutional rights secured under the Fifth and Fourteenth Amendments and Article I, Sections 10 and 16 of the Ohio Constitution. (T. Vol. 5 at 503, 512-13, 559-560)."

**{¶114}** Appellant argues his convictions on Counts 18-22 were not supported by sufficient evidence. R.C. 2907.03(A)(5) prohibits engaging in sexual conduct with another, not the person's spouse, while standing in loco parentis for the other person.

**{¶115}** To establish a violation of R.C. 2907.03(A)(5), the State was required to prove that appellant engaged in sexual conduct with D.L. while he was standing in loco parentis for her. Appellant does not challenge that he engaged in sexual conduct with D.L. However, he submits the State failed to establish that he was standing in loco parentis for D.L.

**{¶116}** The State argues appellant was standing in loco parentis because he was the potential or would-be step-grandfather to D.L. and had a prior relationship with her. He owned the house where the crime occurred, was responsible for providing food and drink for the party, and gave permission for D.L. to spend the night. He also told D.L. and others where to sleep for the night and was the only responsible adult, essentially serving as the authority figure for the minors at the party.

**{¶117}** "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury's verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier

30

of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶118} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the state's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶119} "'In order to meet the definition of in loco parentis, a person must not only assume a dominant parental role, but must also be relied upon by the child for support.'" In *Matter of A.W.,* 11th Dist. Ashtabula No. 2021-A-0025, 2022-Ohio-1097, at ¶ 23, quoting *State v. Burgett,* 3d Dist. Marion No. 9-09-14, 2009-Ohio-5278, ¶ 23. "The phrase 'person in loco parentis' in R.C. 2907.03(A)(5) applies to a person who has assumed the dominant parental role and is relied upon by the child for support. This statutory provision was not designed for teachers, coaches, scout leaders, or any other persons who might temporarily have some disciplinary control over a child. Simply put, the statute applies to the people the child goes home to." *State v. Noggle*, 67 Ohio St.3d 31, 33, 615 N.E.2d 1040 (1993).

{¶120} In *Matter of A.W.,* we recently discussed the issue of in loco parentis in relation to a grandparent seeking to intervene in a custody matter. We said that the grandmother was not acting in loco parentis where she did not claim to have assumed a dominant parental role or exercise care and control in the absence of the child's parents. *Id.* at ¶ 24. We noted the grandmother had acted in a role "of a typical grandmother: being involved, providing financial assistance, baby supplies, and equipment." *Id.* These actions

31

were "insufficient to demonstrate * * * the legal standard for having acted in loco parentis[.]"

{¶121} *Matter of A.W.* addressed a grandmother involved in the life of a child and interested in providing financial assistance, material support, and babysitting. Those activities were not enough to establish a grandmother acting in loco parentis. In this case, appellant's involvement with D.L. was minimal and not remotely akin to a parental role.

{¶122} The only trial testimony about appellant being treated in a familial role at all was from Michael, who said appellant "was not our step grandfather, but we looked at – looked at him as our grandfather" because "my father was dating his daughter, and we were around them quite frequently for family activities." While this may establish that appellant acted in a grandfatherly role, viewing an older male through a grandfatherly role, without more, will not establish in loco parentis.

{¶123} Applying the factors set forth in *State v. Rohn,* 11th Dist. Lake No. 2020-L-006, 2020-Ohio-6918, appellant was not charged with the rights and responsibilities of a parent. He did not assume the same duties of a guardian or assume a dominant parental role. D.L. did not rely on him for support or go home to appellant. Appellant did not have a close supportive or protective relationship, nor did he indicate an intention to act as a parent. Appellant was not the primary caretaker for the child and did not intentionally assume parental obligations.

{¶124} The most that can be said is that he acted in a grandfatherly role and hosted a sleep-over party for D.L. and the other minors on one occasion. Appellant was a person with some temporary disciplinary control over D.L. but he was not the person she went home to or relied upon for support. *See Noggle,* 67 Ohio St.3d 33, 615 N.E.2d 1040. Even

32

if believed, the evidence was not sufficient to sustain a conviction for Sexual Battery under R.C. 2907.03(A)(5).

{¶125} At sentencing, the State elected to sentence appellant on Counts 18-22 and the trial court sentenced him accordingly. However, the jury also found appellant guilty of Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04 on Counts 24-28. R.C. 2907.04 prohibits a person 18 years of age or older from engaging in sexual conduct with another when the offender knows the other person is 13 years of age or older, but less than 16 years of age, or where the offender is reckless in that regard.

{¶126} The State's election to proceed to sentencing on the Sexual Battery counts did not eliminate the jury's verdicts of guilty on the Unlawful Sexual Conduct with a Minor counts. *See State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶ 26. "It therefore follows that when a disputed conviction is premised upon insufficient evidence and is subsequently vacated, the reversal of that conviction does not function to vacate or eliminate a jury's verdict for crimes the defendant was found guilty, but of which a defendant was not convicted due to the merger exercise." *Id.*

{¶127} Therefore, even though we reverse and vacate for appellant's Sexual Battery convictions, upon remand, the trial court may proceed to sentence appellant and enter convictions for Counts 24-28. Until the trial court enters convictions on those counts, no final appealable order exists, and we do not have the jurisdiction to address the weight or sufficiency of the evidence on those counts. *Id.* at ¶ 27.

{¶128} Accordingly, appellant's fifth assignment of error has merit.

{¶129} "[6.] Appellant's Convictions on Counts 12, 18-22, and 24-28 are against the manifest weight of the evidence. (Tr. Vol. 5 at 496-519)."

33

{¶130} As we have already found Counts 18-22 were not supported by sufficient evidence, we need not address them under a manifest weight of the evidence review. Additionally, we may not review Counts 24-28 until the trial court sentences appellant on those counts and enters judgment. However, we may pass on Count 12 and do so here.

{¶131} Appellant argues his conviction for Rape involving A.W. was against the manifest weight of the evidence because never told appellant not to take off her shorts and did not try to stop him from doing so. He also notes that A.W. testified she did not think it was a big deal when appellant began to pull her pants off. He argues further that Michael, when he entered the room, believed A.W.'s activity was consensual, as demonstrated by his later text telling A.W. "never to do s*** with me again." Appellant believes that A.W. had a motive to engage in sexual activity with him, because Michael and Tiara had exchanged social media contacts and spent time together during the party.

{¶132} When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates to the evidence's persuasiveness. *Id.*

{¶133} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-

Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus. The reviewing court "determines whether * * * the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶134} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶135} Appellant was convicted on one count of Rape in violation of R.C. 2907.2(A)(2), which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶136} "'Force' means 'any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). In the context of R.C. 2907.02, "[f]orce can be inferred from the circumstances surrounding the sexual

35

contact and is established if it is shown that the victim's will was overcome by fear or duress." *State v. Lawson*, 11th Dist. Lake No. 2021-L-133, 2022-Ohio-3972, ¶ 38, citing *State v. Rodriguez*, 8th Dist. Cuyahoga App. No. 82265, 2003-Ohio-7056.

{¶137} Although appellant has argued A.W. did not tell her not to take her panties off, A.W. testified that she told appellant to stop three or four times and tried to push his head away from her. A.W. also testified that she was afraid of appellant and scared to move. She said that she is 5 feet 5 inches tall while appellant was 6 feet tall and weighed more than she did. She also described being afraid for her safety and for D.L.'s safety if she tried to stop appellant. Significantly, A.W. testified that she felt the need to protect D.L., who was still in the room, from further trauma.

{¶138} This testimony demonstrated that appellant engaged in sexual conduct with A.W. and that the force element was established because appellant overcame A.W.'s will by fear or duress. The jury did not believe appellant's theory of the case and did not lose its way in doing so.

{¶139} Accordingly, appellant's sixth assignment of error is without merit.

{¶140} Appellant's seventh assignment of error states:

{¶141} "[7.] Did the trial court err in sentencing Appellant to 36-41.5 years imprisonment, where it failed to make the necessary findings to impose consecutive sentences, the record did not support imposing consecutive sentences and the sentences imposed and the sentencing scheme under which appellant was sentenced is unconstitutional?"

{¶142} Appellant has raised several issues relating to consecutive sentencing in his seventh assignment of error. However, because we have held that Counts 18-22 were

36

not supported by sufficient evidence, the only remaining count for which appellant was sentenced is Count 12. Therefore, appellant's argument regarding consecutive sentences is moot pending appellant's resentencing on remand.

{¶143} In addition to his consecutive sentencing arguments, appellant also argues that his indefinite sentence imposed on the Rape count under the Reagan Tokes Law is unconstitutional and that the trial court's imposition of the maximum sentence was not supported by the record and contrary to law. As to the imposition of an indefinite sentence, based on the Ohio Supreme Court's recent ruling upholding the constitutionality of the Regan Tokes Law, appellant's arguments are without merit. *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, ¶ 41.

{¶144} As to the maximum sentence argument, App.R. 16(A)(7) requires an appellant's brief to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "It is not an appellate court's duty to guess the arguments of an appellant." *Dennis v. Nickajack Farms, Ltd.*, 11th Dist. Geauga No. 2014–G–3188, 2014-Ohio-5468, ¶ 6. Appellant has not articulated any arguments or citations to authorities, statutes, and parts of the record upon which he relies in respect to this argument. We decline to formulate appellant's arguments on this issue.

{¶145} Accordingly, appellant's seventh assignment of error is without merit.

{¶146} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded. This case is remanded for further proceedings consistent with this opinion. The matter is remanded to the trial

37

court to vacate appellant's convictions for Sexual Battery on Counts 18-22. The trial court

shall conduct a new sentencing hearing and enter a conviction on the previously merged

Counts 24-28.


MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2022-A-0067